**Albert SHIELDS, Jr., Heir of Albert Shields, Sr., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**No. A 77–66 Civil.**

United States District Court,
D. Alaska.

Jan. 9, 1981.

Alaska Legal Services Corporation, Craig Tillery, Mike Jeffrey, Gregory O'Leary, Richard Brown, Anchorage, Alaska, for plaintiffs.

Rene Gonzalez, U. S. Atty., District of Alaska, Anchorage, Alaska, John M. Allen, Bruce Schultheis, Dept. of Interior, Anchorage, Alaska, for defendants.

OPINION

FITZGERALD, District Judge.

This case presents a single issue. Must Alaskan Natives applying for allotments within a national forest under the 1906 Alaska Native Allotment Act establish personal use and occupancy of the land prior to establishment of the forest?[1] Resolution of the issue turns on the construction given section 2 of the 1956 Amendments to the Native Allotment Act.[2]

> Sec. 2. Allotments in national forests may be made under this Act if founded on occupancy of the land prior to the establishment of the particular forest or if the Secretary of Agriculture certifies that the land in an application for an allotment is chiefly valuable for agricultural or grazing purposes.

The precise question is what the Congress meant by "founded on occupancy of the

---

1. This court has jurisdiction under 28 U.S.C. § 1353 (1976) and 25 U.S.C. § 345 (1963). *Pence v. Kleppe*, 529 F.2d 135 (9th Cir. 1976). This case is before this court on review of a final decision by the Interior Board of Land Appeals denying Albert Shields, Sr.'s application for allotment.

2. Act of May 17, 1906, 34 Stat. 197, as amended, Act of August 6, 1956, 70 Stat. 954; repealed by the Alaska Native Claims Settlement Act, § 18, with a savings clause for applications pending on December 18, 1971, 43 U.S.C. § 1617(a) (1980).

land prior to the establishment of the particular forest...." The plaintiff claims that the applicant must demonstrate that Native occupancy was established prior to the applicable withdrawal for the forest. The defendants contend that the applicant must personally have occupied the land prior to the withdrawal.

Plaintiffs consist of a class of Alaska Natives who have applied for allotments under the 1906 Alaska Native Allotment Act. The land they seek is located within a national forest and was occupied by Alaska Natives prior to the forest withdrawal, but plaintiffs are unable to establish their personal use of it before its withdrawal.

*THE 1906 ACT*

The Treaty of Cession[3] in which the United States obtained Alaska by purchase from Russia in 1867 did not address the property rights of the Native inhabitants. It provided only that the Natives would be subject to such laws as the United States might adopt with respect to the aboriginal tribes.[4] The Organic Act of 1884[5] contained the first mention of the property rights of Alaskan Natives. Section 8 provided:

... that the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress ....

In 1887 Congress enacted the General Allotment Act[6] which provided:

Where any Indian not residing upon a reservation, or for whose tribe no reservation has been provided by treaty, Act of Congress, or Executive Order, shall make settlement upon any surveyed or unsurveyed lands of the United States not otherwise appropriated, he or she shall be entitled, upon application to the local land office for the district in which the lands are located, to have the same allotted to him or her, and to his or her children ....

Since in several decisions Alaskan Natives had been found not to be within the definition of "Indian", there was doubt whether the General Allotment Act applied to Alaskan Natives. Congress moved in 1906 to eliminate this doubt[7] by passing the Alaska Native Allotment Act, which provided in part:[8]

That the Secretary of the Interior is hereby authorized and empowered in his discretion and under such rules as he may prescribe, to allot not to exceed one hundred and sixty acres of nonmineral land in the district of Alaska to any Indian or Eskimo of full or mixed blood who resides in and is a native of said district, and who is the head of a family, or is twenty-one years of age: and the land so allotted shall be deemed the homestead of the allottee and his heirs in perpetuity, and shall be inalienable and nontaxable until otherwise provided by Congress. Any person qualified for an allotment as aforesaid shall have the preference right to secure by allotment the nonmineral land occupied by him not exceeding one hundred and sixty acres.

In 1910 Congress amended the General Allotment Act[9] to allow for allotments in the national forests:

The Secretary of the Interior is authorized, in his discretion, to make allotments within the national forests in conformity with the general allotment laws, to any Indian occupying, living on, or having improvements on land included within

---

**3.** Treaties of March 6, 1867, 15 Stat. 539.

**4.** *United States v. ARCO*, 435 F.Supp. 1009 (D. Alaska 1978), *aff'd* 612 F.2d 1132 (9th Cir. 1980), *cert. denied*—— U.S. ——, 101 S.Ct. 244, 66 L.Ed.2d 113 (1980).

**5.** Act of May 17, 1884, 23 Stat. 24.

**6.** 25 U.S.C. § 334.

**7.** *Pence v. Kleppe*, 529 F.2d 135 (9th Cir. 1976).

**8.** Act of May 17, 1906, 34 Stat. 197, as amended, Act of August 6, 1956, 70 Stat. 954; repealed by the Alaska Native Claims Settlement Act, § 18, with a savings clause for applications pending on December 18, 1971, 43 U.S.C. § 1617(a) (1980).

**9.** 25 U.S.C. § 337.

any such national forest who is not entitled to an allotment on any existing Indian reservation, or for whose tribe no reservation has been provided, or whose reservation was not sufficient to afford an allotment to each member thereof. All applications for allotments under the provisions of this section shall be submitted to the Secretary of Agriculture who shall determine whether the lands applied for are more valuable for agricultural or grazing purposes than for the timber found thereon; and if it be found that the lands applied for are more valuable for agricultural or grazing purposes, then the Secretary of the Interior shall cause allotment to be made as herein provided. No such amendment was made to the Alaska Native Allotment Act despite the fact that some sixteen million acres of Native lands were set aside by presidential proclamations in 1902, 1907 and 1909 to create what is now the Tongass National Forest.[10] Additional land was set aside by presidential proclamation for the Chugach National Forest commencing in 1907.[11]

The early decisions of the Department of the Interior relating to allotments within national forests required "actual" occupancy prior to the establishment of the national forest.[12] However, this requirement was dropped in 1935[13] in favor of the "founded on occupancy" language at issue in this lawsuit. The earliest published regulations of the Department of the Interior incorporated this language as well as a provision of the 1910 General Allotment Act making land included within a national forest available for allotment if it was chiefly valuable for agriculture or grazing and personally occupied by the applicant.[14]

The Allotment Act, as adopted in 1906, provided that allotments were inalienable unless otherwise provided by Congress. The 1956 Amendments to the Act were designed to rectify this situation.[15] As originally introduced, the bill addressed only the alienation issue.[16]

Apparently some concern was expressed in the House Subcommittee that Alaska Natives might seek allotments in the national forests solely for the purpose of selling the land to others. To eliminate this danger the substance of the Interior Department's regulations on the subject were enacted into the bill. A report from the Department of the Interior concerning this legislation[17] stated:

Subsection (e) of the enclosed substitute bill [Sections 2 and 3 of the Act] contains the subcommittee recommendations that are designed to safeguard the national forests. Some fear was expressed during the subcommittee hearings that the authority to sell homesteads might encourage Indians and Eskimos to seek homestead allotments in the national forests for the purpose of selling them to others. This danger is effectively obviated by enacting into law the substance of the Department's present regulations on the subject, which prohibit homestead selections in the national forests unless they are founded upon occupancy of the land prior to the establishment of the forest, or unless the land selected is determined by the Secretary of Agriculture to be chiefly valuable for agricultural or grazing purposes, and which require the homesteader to prove 5 years' occupancy of the land.

The House Report[18] echoed the Department's analysis:

Subsection (e) safeguards the national forests by enacting into law the sub-

---

10. *See Tlingit and Haida Indians of Alaska v. United States*, 177 F.Supp. 452, 466–67, 147 Ct.Cl. 315 (1959).

11. Presidential Proclamation of July 23, 1907.

12. 48 L.D. 70, 71 (1921); 50 L.D. 27, 48 (1923); 51 L.D. 145, 146 (1925).

13. 55 L.D. 282, 283.

14. 43 C.F.R. 67.7 (1940).

15. H.R.Rep.No.2534, 84th Cong., 2d Sess. (1956).

16. H.R.10505, 84th Cong., 2d Sess. (1956).

17. H.R.Rep.No.2534, 84th Cong., 2d Sess. 4 (1956).

18. *Id.* at 2.

stance of present regulations which prohibit homestead selections in the national forests unless they are founded upon occupancy of the land prior to the establishment of the forest, or unless the land selected is determined by the Secretary of Agriculture to be chiefly valuable for agricultural or grazing purposes, and which require the homesteader to prove 5 years' occupancy of the land.

The Senate Report [19] was even more explicit on the occupancy requirement:

Allotments may be made in the national forests if the land is chiefly valuable for agricultural or grazing purposes, or if the native had occupied the land prior to the establishment of the forest.

Early administration practice,[20] while sparse,[21] appears to have required individual occupancy of the land prior to the forest withdrawal. Although there were some exceptions to this practice,[22] since the 1956 Amendments, the Department has consistently required individuals seeking allotments to establish their own use and occupancy of the land prior to the establishment of the particular forest withdrawal.[23]

It is obvious that when Congress amended the 1906 Act it gave great weight to the Interior Department's interpretation and practices regarding the statutory language at issue. Such circumstances are persuasive evidence that the interpretation urged by the agency is the one intended by Congress.[24] This principle is especially true when, as here, there are long-standing administrative decisions interpreting the availability of land for Native selection, acceptance of that interpretation by Congress, and enactment of legislation prepared by the agency charged with administration of the Act.[25]

Based on the administrative and legislative history, I conclude that Congress was primarily concerned with allowing for alienation of allotments when it amended the Alaska Native Allotment Act in 1956. Due to its concern that such legislation might encourage the selection and sale of such allotments within national forests, Congress enacted into law the substance of then existing regulations on the subject. I conclude that the intent of Congress in this regard was to restrict allotments within national forests [26] by prohibiting them ex-

---

**19.** S.Rep.No.2696, 84th Cong., 2d Sess. 1 (1956).

**20.** See e. g. Yakutat and Southern Railway v. Setuck Harry, Heir of Setuck Jim, 48 L.D. 362, 364 (1921); Frank St. Clair, 52 L.D. 597, 598 (1929).

**21.** Although the Native Allotment Act dates back to 1906, few certificates of allotment were granted under the Act for the first 50 years. As of November 8, 1955, a total of 79 allotments had been made pursuant to the Act, and 64 additional applications were under consideration. S.Rep.No.2696, 84th Cong., 2d Sess. (1956).

**22.** See exhibits 25–27 to Plaintiffs' Motion for Summary Judgment.

**23.** See e.g. Louis P. Simpson, 20 IBLA 387 (1975); Mary Y., 21 IBLA 223 (1975); Christina Laverne Hanlon, 23 IBLA 36 (1975); Estate of Benjamin Wright, 23 IBLA 120 (1975); Nadia Davis Gamble, 23 IBLA 128 (1975); Arthur R. Martin, 41 IBLA 224 (1977). On petition for rehearing in the Simpson case the IBLA indicated that those earlier decisions (see note 22) which did not require proof of personal occupancy prior to the withdrawal were erroneous. 41 IBLA 229–30 (1979).

**24.** Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965); Russ v. Wilkens, 624 F.2d 914, 922–24 (9th Cir. 1980).

**25.** Plaintiffs argue vigorously that the principle of statutory construction requiring ambiguities and doubtful expressions in statutes passed for the benefit of Indians to be resolved in favor of Indians dictates a ruling in their favor. This canon, however, is only a guideline, not a substantive law and should not be used to defeat the manifest intent of Congress. U. S. v. Atlantic Richfield Co., 612 F.2d 1132 (9th Cir. 1980), cert. denied —— U.S. ——, 101 S.Ct. 244, 66 L.Ed.2d 113 (1980).

**26.** Plaintiffs have strongly argued that Congress could not have intended to require personal use and occupancy of the land prior to the forest withdrawal since the withdrawals occurred in the early 1900's and few Native Alaskans, if any, would have been eligible for allotments when the Act was amended in 1956. This argument assumes, however, that the purpose of the amendments was to assure the right to allotments in the national forests. On the contrary, the purpose of the amendments appears to have been the safeguarding of the national forests from allotments sought only for sale.

cept to those individuals who could demonstrate personal occupancy of the land prior to the establishment of the forest or unless the land selected is chiefly valuable for agricultural or grazing purposes. I find, therefore, that the language "founded upon occupancy of the land prior to the establishment of the particular forest" requires Alaska Natives who seek allotments within a national forest to demonstrate their personal use and occupancy of that land prior to the establishment of the forest.

Plaintiffs' Motion for Summary Judgment is, therefore, DENIED. Defendants' Cross Motion for Summary Judgment is GRANTED and the case is DISMISSED.