Albert SHIELDS, Jr., Heir of Albert Shields, Sr., et al., Appellants,

v.

UNITED STATES of America, et al., Appellees.

No. 81–3120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1982.

Decided Feb. 7, 1983.

Craig Tillery, Anchorage, Alaska, for appellants.

Rene Gonzalez, U.S. Atty., Anchorage, Alaska, Martin W. Matzen, Washington, D.C., for appellees.

Before WRIGHT, SKOPIL and ALAR-CON, Circuit Judges.

SKOPIL, Circuit Judge:

Appellant class, approximately 200 applicants for allotments under the 1906 Alaska Native Allotment Act, appeal a district court decision holding that the Allotment Act requires the applicant to establish personal, rather than ancestral, use and occupancy of the land prior to its withdrawal for national forests. We affirm.

## I.

In 1906 Congress passed the Alaska Native Allotment Act, Pub.L. No. 171, 34 Stat. 197 (amended 1956, repealed 1971), which authorized the Secretary of the Interior to grant Alaska Natives allotments of up to 160 acres. In 1956 Congress amended the Allotment Act. Act of Aug. 2, 1956, Pub.L. No. 931, 70 Stat. 954 (codified at 43 U.S.C. §§ 270–1 to 270–3 (1970) (repealed 1971)) ("Allotment Act").[1] The text of the 1906 Allotment Act became section 1, and was amended to allow alienation. Section 2 provided that allotments in national forests could be made

"if founded on occupancy of the land prior to the establishment of the particular forest or if the Secretary of Agriculture certifies that the land in an application for an allotment is chiefly valuable for agricultural or grazing purposes."

Section 3 provided that no allotment (whether in or outside a national forest) could be made except on proof of five years "substantially continuous use and occupancy" by the applicant.

On December 13, 1971 Albert Shields, Sr. filed an application for an allotment of 160 acres of land presently within the Tongass National Forest. The land for which he applied had been withdrawn for national forest use by presidential proclamation on February 16, 1909. Mr. Shields alleged that his grandfather had lived on this land beginning in the 1850's. Mr. Shields was born in 1915, and his use of the land began in 1920. The BLM rejected Mr. Shields' application for allotment because he had failed to demonstrate either personal use prior to the withdrawal or that the land was chiefly valuable for agricultural grazing purposes. The Interior Board of Land Appeals ("IBLA") rejected Mr. Shields' appeal for the same reasons. 23 IBLA 188 (January 5, 1976).

Mr. Shields filed this action in district court in the District of Columbia on February 23, 1977 to review the IBLA denial of the application for allotment. The case was transferred to the District of Alaska on motion of the United States. The plaintiff, Albert Shields, Sr., died on November 13, 1977 and Albert Shields, Jr. was substituted as plaintiff.

The district court certified a plaintiff class of all Alaska Natives who had made timely application for allotments under the Alaska Native Allotment Act for land located within a national forest whose applications had been denied on the grounds that they cannot establish personal occupancy of that land prior to the forest withdrawal. Both sides filed cross-motions for summary judgment.

On January 9, 1981 the district court granted the government's motion for summary judgment and held that Alaska Natives applying for allotments within a national forest under the 1906 Alaska Native Allotment Act must establish personal, rather than ancestral, use and occupancy of the land prior to establishment of the national forest. *Shields v. United States*, 504 F.Supp. 1216 (D.Alaska 1981).

---

1. The Allotment Act was repealed by section 18 of the Alaska Native Claim Settlement Act ("ANCSA"), 43 U.S.C. § 1617, with a savings clause for applications pending on December 18, 1971. 43 U.S.C. § 1617(a).

## II.

The sole issue before us is whether Alaska Natives applying for allotments within a national forest under the Alaska Native Allotment Act must establish personal, rather than ancestral, use and occupancy of the land prior to establishment of the national forest.

## III.

Section 2 of the Alaska Native Allotment Act, as amended in 1956, provides:

"Sec. 2. Allotments in national forests may be made under this Act if *founded on occupancy of the land prior to the establishment of the particular forest* or if the Secretary of Agriculture certifies that the land in an application for an allotment is chiefly valuable for agricultural or grazing purposes."

43 U.S.C. § 270–2 (1970) (repealed 1971) (emphasis added). The government contends the statute requires that the applicant must personally have occupied the land prior to the withdrawal; appellant claims that occupancy by a direct ancestor is sufficient.

In interpreting statutes the court's objective is to ascertain the intent of Congress. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). The primary rule of statutory construction is to ascertain and give effect to the plain meaning of the language used. *Hughes Air Corp. v. Public Utilities Comm.*, 644 F.2d 1334 (9th Cir.1981). The language of the statute, however, does not aid our search for congressional intent. The statute does not indicate whether personal or ancestral occupancy is required.

Appellants argue that unless section 2 is read to require only ancestral occupancy, the additional requirement of five years use and occupancy in section 3 would be rendered meaningless, in violation of the rule of statutory construction that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless. *Hughes Air Corp., supra*, at 1337; *Jacobson v. Rose*, 592 F.2d 515

(9th Cir.1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Patagonia Corp. v. Board of Governors of Federal Reserve System*, 517 F.2d 803 (9th Cir.1975). This argument is meritless. The section 3 five year occupancy requirement applies to allotments under both sections 1 and 2. Section 1 authorizes allotments from any public lands in Alaska, while section 2 authorizes allotments under specific conditions from national forest lands. Thus, the personal occupancy requirement of section 3 has meaning as applied to section 1 allotments, regardless of the interpretation of section 2.

Because the language of the statute does not reveal congressional intent, we must look to the legislative history. *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868 (9th Cir.1981). The 1956 amendments to the 1906 Alaska Native Allotment Act began as a House Bill, HR 11696. The House Report states that sections 2 and 3 "[safeguard] the national forests by enacting into law the substance of present regulations which prohibit homestead selections in the national forests unless they are founded upon occupancy of the land prior to the establishment of the forest ...." H.R. Rep. No. 2534, 84th Cong., 2d Sess. 2 (1956) [hereinafter cited as House Report]. Congress was concerned that the 1956 amendments which permitted alienation of allotments would allow some natives to secure land in national forests for the purpose of selling it. *Id.*

The Senate Report clearly states that "[a]llotments may be made in the national forests ... *if the native had occupied* the land prior to the establishment of the forest." S.Rep. No. 2696, 84th Cong., 2d Sess. 1, *reprinted at* 1956 U.S.Code Cong. & Ad. News 4201, 4202 (emphasis added). This indicates that personal, rather than ancestral, use is required.

Both the House and Senate Reports are clear that sections 2 and 3 were "enacting into law the substance of the Department's present regulations on the subject" of allotments. House Report at 4; Senate Report at 4, *reprinted in* 1956 U.S.Code & Ad.News

at 4204. We therefore look to the Department of the Interior's contemporaneous regulations for the interpretation of "occupancy."

The early regulations of the Department of the Interior relating to allotments within national forests required that allotments must be "founded on *actual* occupancy prior to the establishment of the forest." 48 L.D. 70, 71 (1921); 50 L.D. 27, 48 (1923); 51 Pub.Lands Dec. 145, 145–46 (1925) (emphasis supplied). In 1935 the Department dropped the word "actual" from its regulations, and from then on utilized the "founded on occupancy" language that was subsequently enacted into the amended Alaska Native Allotment Act. 55 Interior Dec. 282, 283 (1935); 43 C.F.R. § 67.7 (1938–1954); 43 C.F.R. § 67.2 (1958); 43 C.F.R. § 2212.9–2(c) (1965); 43 C.F.R. § 2561.0–8(c) (1977). The regulations contain no explanation of what is meant by the term "occupancy," nor any indication that the deletion of the word "actual" indicated a change in legal rights.

The administrative practice with regard to these regulations at the time of the 1956 amendments gives little aid in determining the meaning of the term "occupancy." There has been minimal implementation of the Native Allotment program. *United States v. Atlantic Richfield Co.,* 435 F.Supp. 1009, 1015 (D.Alaska 1977), *aff'd,* 612 F.2d 1132 (9th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980); S.Rep. No. 405, 92d Cong., 1st Sess. at 91 (1971). As of the time of congressional consideration of the 1956 amendments, a total of 79 allotments had been made pursuant to the 1906 Act. House Report at 3. There are very few reported decisions of the Department of the Interior regarding these allotments. The earlier published decisions do not address the issue in this case, as they involved natives whose personal use of the land predated the establishment of the national forest (the national forest having been recently established). *Yakutat & Southern Railway v. Setuck Harry, Heir of Setuck Jim,* 48 L.D. 362 (1921); *Frank St. Clair,* 52 L.D. 597 (1929).

In several unpublished decisions in the 1950's the Bureau of Land Management permitted allotments on the basis of ancestral rather than personal occupancy. *Jack Gamble,* Anchorage 017456 (August 10, 1951) (decision by Director of BLM); *Charles G. Benson,* Juneau 011549 (August 24, 1961); *John Littlefield,* Anchorage 133471 (April 28, 1961). However, these decisions were unpublished and of little precedential value.

Since the 1956 amendments the only published I.B.L.A. decisions regarding allotments, involving about 200 consolidated cases in the 70's, held that personal occupancy was required by the Allotment Act. *Louis P. Simpson,* 20 I.B.L.A. 387 (June 16, 1975), petition for reconsideration denied, 41 I.B.L.A. 229 (Oct. 30, 1975); *Mary Y. Paul,* 21 I.B.L.A. 223 (July 31, 1975); *Christine Laverne Hanlon,* 23 I.B.L.A. 36 (December 2, 1975); *Estate of Benjamin Wright,* 23 I.B.L.A. 120 (December 23, 1975); *Nadja Davis Gamble,* 23 I.B.L.A. 128 (December 23, 1975); *Albert Shields, Sr.,* 23 I.B.L.A. 188 (January 5, 1976); and *Arthur R. Martin,* 41 I.B.L.A. 224 (June 27, 1979). The Board dismissed the 1950's decisions of *Gamble, Benson,* and *Littlefield* as possibly erroneous and nonprecedential. *Louis P. Simpson, supra,* 41 I.B.L.A. 229 (petition for reconsideration).

Appellants argue that they should prevail because ambiguous language should be construed in favor of the natives. When unresolved ambiguity exists, this court has applied that familiar canon of statutory construction. *E.g., Escondido Mutual Water Co. v. F.E.R.C.,* 692 F.2d 1223, 1236–37 (9th Cir.1982); *Rehner v. Rice,* 678 F.2d 1340, 1348 (9th Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 291, 74 L.Ed.2d 275 (1982). Nonetheless, we agree with the district court that the canon is but a guideline and not a substantive law. *Shields,* 504 F.Supp. at 1219, n. 25. The canon of construction cannot be used by the courts to accomplish what Congress did not intend. *Andrus v. Glover Construction Co.,* 446 U.S. 608, 619, 100 S.Ct. 1905, 1911, 64 L.Ed.2d 548 (1980). Nor can the canon be used to judicially legislate. *Blackfeet Tribe of Indians v. Groff,* No. 81–3041 (9th Cir. Dec. 14, 1982).

Here, the language of the statute is not conclusive. Nevertheless, the legislative and administrative history is sufficient for us to construe the intent of Congress. Further, it is appropriate to give great weight to the construction given to a statute by the agency charged with its administration. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). For example, in *Assiniboine & Sioux Tribes v. Nordwick,* 378 F.2d 426 (9th Cir.1967), *cert. denied,* 389 U.S. 1046, 88 S.Ct. 764, 19 L.Ed.2d 838 (1968), we were presented with an ambiguous statute with no enlightening legislative history. We declined to apply the canon of liberal construction because we found sufficient administrative practice to warrant judicial deference. *Assiniboine,* 378 F.2d at 432.

## CONCLUSION

After reviewing the legislative and administrative history, we conclude that Congress intended to limit allotments on national forest lands to those individuals whose personal occupancy antedated the withdrawal of the land for the national forest. Accordingly, the decision of the district court is AFFIRMED.