Mary T. AKOOTCHOOK; Sergie Alexanderoff; Daniel Akootchook; George Akootchook; Adeline Jim, Plaintiffs–Appellants,

v.

UNITED STATES of America; Gale A. Norton,* Defendants–Appellees.

No. 00–35325.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2001

Filed Nov. 8, 2001

---

* Gale A. Norton, is substituted for her predecessor, Bruce Babbitt, as Secretary of the Department of the Interior.

Harold J. Curran, Alaska Legal Services Corporation, Anchorage, Alaska, for the plaintiffs-appellants.

John A. Bryson, United States Department of Justice, Washington, D.C., for the defendants-appellees.

Before: SCHROEDER, Chief Judge, T.G. NELSON and SILVERMAN, Circuit Judges.

T.G. NELSON, Circuit Judge:

George Akootchook, Mary T. Akootchook, Daniel Akootchook, Sergie Alexanderoff, and Adeline Jim (as heir of George Jim, Sr.), are five native Alaskans who challenge the Department of Interior's decision denying their applications for land allotments under the Alaska Native Allotment Act. The Department concluded that the claims to allotments were not valid because, prior to withdrawal of the land from the public domain, the individuals did not use the land independent of their families. For the reasons stated, we affirm the district court's dismissal of the action.

## FACTS AND PROCEDURAL HISTORY

The 1887 General Allotment Act[1] provided Indians not residing on a reservation with the opportunity to apply for a 160–acre allotment on unsurveyed and otherwise unappropriated land of the United States. In 1906, Congress passed the Alaska Native Allotment Act (ANAA)[2] to clarify the rights of Indians and Eskimos to apply for allotments of unappropriated, vacant, and unreserved nonmineral land in Alaska. To be eligible, the applicants had to show "substantially continuous use and occupancy of the land for a period of five years"[3] prior to the date the land was withdrawn from the public domain. The Department's regulations implementing the ANAA provide:

> The term "substantially continuous use and occupancy" contemplates the customary seasonality of use and occupancy by the applicant of any land used by him for his livelihood and well-being and that of his family. Such use and occupancy must be substantial actual possession and use of the land, at least potentially exclusive of others, and not merely intermittent use.[4]

The Alaska Native Claims Settlement Act[5] repealed the ANAA in 1971, but preserved all applications for allotments pending before the Department of the Interior on December 18, 1971.[6]

Appellants applied for allotments under the ANAA in the early 1970's. The Department, through the Interior Board of Land Appeals (IBLA), denied the applications because Appellants had not used the claimed land for a continuous period of five years prior to withdrawal of the land from the public domain. However, in 1976, after the IBLA had denied each Appellant's application, this court held, in *Pence v. Kleppe*,[7] that the IBLA's processes for reviewing applications did not meet due process requirements. *Pence* held, as relevant here, that applicants are entitled to an opportunity for an oral hearing before a neutral fact-finder prior to any decisions on their applications.[8] These hearings are

---

1. 25 U.S.C. § 334.

2. Ch. 2469, 34 Stat. 197 (codified as amended at 43 U.S.C. § 270–1 to 270–3 (repealed 1971)).

3. 43 U.S.C. § 270–3.

4. 43 C.F.R. § 2561.0–5(a).

5. 43 U.S.C. §§ 1601–1629.

6. *Id.* § 1617(a).

7. 529 F.2d 135 (9th Cir.1976).

8. *Id.* at 142–43.

known as *Pence* hearings. In 1979, the Interior Department changed its interpretation of ANAA, requiring only that the qualifying use and occupancy of the land *commence* prior to withdrawal, rather than requiring five years of use prior to withdrawal.[9]

Because of *Pence*, Appellants were entitled to hearings on their reopened applications. But before these hearings occurred, two different groups of Alaskan natives filed class action lawsuits in the district court. The first suit, *Shields v. United States*,[10] asserted that the IBLA's refusal to approve applications for allotments in certain national forests when the applications relied on ancestral use prior to withdrawal-as opposed to personal use-was arbitrary, capricious, and an abuse of discretion. The district court rejected the class claim,[11] and this court affirmed.[12] It is undisputed that George Jim, Sr. was a member of the *Shields* class. The second class action, *Akootchook v. United States*, was initiated by George Akootchook and three other applicants not involved in this appeal. They asserted that the IBLA's refusal to approve applications for allotments in certain wildlife refuges when the applications relied on ancestral use prior to withdrawal-as opposed to personal use-was also arbitrary, capricious, and an abuse of discretion. The district court rejected the class claim, and this court affirmed.[13] It is undisputed that Mary and Daniel Akootchook and Sergie Alexanderoff were members of the *Akootchook* class.

Between 1989 and 1991, after the *Shields* and *Akootchook* decisions, Appellants received their *Pence* hearings. At their hearings, Appellants asserted-this time relying on the Interior Department's 1979 order-that, although their personal use and occupancy may not have extended five years before withdrawal, their personal use and occupancy *commenced* prior to the withdrawal of the lands that they sought. The IBLA nonetheless denied all five applications, determining that, prior to the withdrawal of the lands in question, Appellants had only used the lands as minors and under the control and supervision of their parents.[14] According to the IBLA, Appellants did not begin to use the lands as independent citizens in their own right until after the lands were withdrawn. Because long-standing Department decisions and policy required independent use of the land separate from any use as a minor when accompanying a parent or an elder, the Appellants could not establish the required use.

Appellants filed an action in district court, jointly challenging the denial of their applications. The district court did not reach the merits, but ruled that the present claims were barred by the *res judicata* effect of the earlier class action suits.[15] It reasoned that George Jim, Sr.'s claim that his personal use and occupancy

---

**9.** *See* Secretary of the Interior Order No. 3040 (May 25, 1979).

**10.** 504 F.Supp. 1216 (D.Alaska 1981).

**11.** *Id.* at 1220.

**12.** *698 F.2d 987 (9th Cir.1983).*

**13.** 747 F.2d 1316 (9th Cir.1984).

**14.** See the following IBLA decisions: Mary Akootchook, 123 IBLA 6 (1992); Sergie Alexanderoff, 129 IBLA 279 (1994); Daniel and George Akootchook, 130 IBLA 5 (1994); and George Jim, Sr., 134 IBLA 294 (1995). The age of each Appellant when the land he or she now seeks was withdrawn, was as follows: George Akootchook–11; Daniel Akootchook–10; Mary Akootchook–12; Sergie Alexanderoff–13; George Jim, Sr.–7.

**15.** *Akootchook v. United States,* No. A98–0126–CV (D.Alaska Oct. 22, 1999).

entitled him to an allotment could have been presented in the *Shields* class action. Similarly, the court held that the other Appellants' claims could have been presented in the *Akootchook* class action. The district court then dismissed the claims with prejudice. We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. We affirm the district court's dismissal of the action, although for different reasons.

## STANDARD OF REVIEW

■■■ We review a district court's grant of summary judgment on *res judicata* grounds *de novo*.[16] In reviewing decisions of the IBLA, we exercise a limited standard of review and will reverse only if the decision is arbitrary, capricious, not supported by substantial evidence, or contrary to law.[17] This court "carefully search[es] the entire record to determine whether it contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and whether it demonstrates that the decision was based on a consideration of relevant factors."[18]

## DISCUSSION

### A. *Res Judicata*

■■■ The United States argued in the district court, as it does here, that the *res judicata* effect of the *Shields* and *Akootchook* class actions bars Appellants' pursuit of this case. The United States contends that the class actions and the present case satisfy the three prerequisites for the application of claim preclusion as stated in *Frank v. United Air-*

*lines, Inc.*[19] Those prerequisites are: "(1) an identity of claims in the two actions; (2) a final judgment on the merits in the first action; and (3) identity or privity between the parties in the two actions." Because we do not believe that there are identical claims in the class actions and the present case, thereby not satisfying the first element of the *Frank* analysis, we disagree with the district court's *res judicata* finding.

The *Akootchook* action was filed as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. That rule provides for class action adjudication if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[20] The class in *Akootchook* consisted of Native Alaskans whose ancestors had used and occupied the lands in question for generations but who had been denied allotments because they could not establish personal use of the land before it was withdrawn.[21] Their claim was that they were entitled to allotments because their ancestors had used and occupied the land prior to withdrawal of the land from the public domain.[22]

The claim of Appellants differs from that in *Akootchook* because Appellants are not asserting rights to allotments based on ancestral use of the land but rather on their own personal use of the land when they were children. The present claim could not fit under the Rule 23(b)(2) class action because very few of the class members personally used the lands before they

---

**16.** *Hiser v. Franklin,* 94 F.3d 1287, 1290 (9th Cir.1996).

**17.** *Hjelvik v. Babbitt,* 198 F.3d 1072, 1074–75 (9th Cir.1999).

**18.** *Id.* at 1074.

**19.** 216 F.3d 845, 850 (9th Cir.2000).

**20.** Fed.R.Civ.P. 23(b)(2).

**21.** *Akootchook,* 747 F.2d at 1318.

**22.** *Akootchook,* 747 F.2d. at 1318–19.

were withdrawn; relief for this claim would not be appropriate for the class as a whole.[23] The only claim common to the class was the ancestral use claim. Thus, the only adverse governmental action common to the class *as a whole* was the denial of the ancestral use claim. Litigation of Appellants' personal use claims would have been counter to the express requirements for class certification in Rule 23(b)(2).

Aside from the fact that the claims are not identical, Appellants could not have brought their personal use claims during the class action because the IBLA had not yet acted on the Appellants' applications. At the time *Akootchook* was filed, the Department had not denied Appellants' claim to entitlement based on personal use because Appellants had not yet received their *Pence* hearings. Their personal use claims against the IBLA were not ripe for review at the time of the class actions.

Finally, requiring Appellants to bring their personal use claims in the class action would destroy the purpose of class actions under Rule 23(b)(2). If all class members had to bring their own individual claims in addition to the common class claims, it would destroy the efficiency of having class actions and reduce the benefit of joining such a suit. Each Appellant's current application is based on his or her own individual circumstances, and the evidence relating to each Appellant's entitlement to land is unique from the evidence

relied upon by other applicants. As the Court said in *Cooper v. Federal Reserve Bank of Richmond:*

> The [United States] argues that permitting the [Appellants] to bring separate actions would frustrate the purposes of Rule 23. We think the converse is true. The class-action device was intended to establish a procedure for the adjudication of common questions of law or fact. If the [United States'] theory were adopted, it would be tantamount to requiring that every member of the class be permitted to intervene to litigate the merits of his individual claim.[24]

Therefore, contrary to the arguments of the United States, and the decision of the district court, none of the claims of the Appellants who were in the *Akootchook* class are barred by the doctrine of *res judicata.*[25]

### B.   *The Departmental Decision*

A preliminary question before we reach the merits is whether we should remand the case to the district court as Appellants urge, or review the IBLA decisions ourselves, as suggested by the United States. The parties fully briefed and argued the issue of the validity of the IBLA decisions before the district court on a complete record. Because we would review *de novo* the district court's decision on the merits,[26] and the issue was properly raised in the

---

**23.** Appellants' reply brief states that many of the class members were not even born before the land was withdrawn. Appellants' Reply Br. at 18.

**24.** 467 U.S. 867, 880, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). *See also Cameron v. Tomes,* 990 F.2d 14, 17, 18 (1st Cir.1993) (in rejecting argument that individual claim was barred by *res judicata* effect of class action, court stated that, "a class action judgment . . . binds the class members as to matters actually litigated but does not resolve any claim based on individual circumstances that was

not addressed in the class action. . . . [C]lass action institutional litigation often addresses general circumstances, not the distinctive plight of someone claiming special needs or status").

**25.** In view of our decision on the merits, we need not separately address the *res judicata* argument as it relates to the claim of Adeline Jim, as the descendent of *Shields* class member George Jim, Sr.

**26.** *Hjelvik v. Babbitt,* 198 F.3d at 1074.

district court, we may decide it on appeal and we will do so.[27]

■ In the district court, Appellants sought a declaration that the IBLA's practice of requiring applicants to prove personal use and occupancy independent of immediate family members is arbitrary, capricious, an abuse of discretion, and not in compliance with the ANAA and the regulations promulgated thereunder. The IBLA's practice arose from its interpretation of 43 C.F.R. § 2561.0–5(a), which provides that qualifying use and occupancy under the ANAA "contemplates the customary seasonality of use and occupancy by the applicant of any land used by him for his livelihood and well-being and that of his family. Such use and occupancy must be substantial actual possession and use of the land, at least potentially exclusive of others." The IBLA's interpretation is not embodied in any formal regulation or policy statement but arose through past adjudications of allotment applications.[28]

The IBLA has interpreted the last sentence of § 2561.0–5(a) to mean that the use of the land must be accomplished by an independent individual acting in his own right.[29] "[T]he substantial use and occupancy required by the [ANAA] must be achieved by the Native as an independent citizen acting for herself and not as a dependent child ... using the land in the company of [and under the supervision of] her parents."[30] The use of land as a minor only can qualify as "substantial use and occupancy" under the ANAA if the child was exerting independent control and use of the land to the exclusion of his or her parents, siblings, or other elders.[31]

■ The first step in our analysis of whether the IBLA's interpretation of the ANAA's language is permissible is to determine if the statute itself clearly answers the question. If the intent of Congress is clear, then the agency must give effect to that unambiguously expressed intent.[32] If the statute is not clear as to the intent of Congress regarding the precise question at issue, then the question becomes "whether the agency's answer is based on a permissible construction of the statute."[33] The agency's interpretation need not be the only permissible construction of the statute, as long as it is a reasonable construction.[34]

Neither the statute nor the regulation clearly define the phrase "substantial use and occupancy." First, we must look to the language of the statute. As relevant to our analysis, the ANAA simply says that "[n]o allotment shall be made to any person ... until said person has made proof satisfactory to the Secretary of the Interior of substantially continuous use and occupancy of the land for a period of five years."[35] Congress did not indicate what the IBLA should consider when making its "substantial use" determinations. In the absence of a clear statutory

---

27. *In re Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir.1989).

28. *See, e.g., In re Sarah F. Lindgren* (on reconsideration), 54 IBLA 181, 182 (1981); *In re Andrew Petla*, 43 IBLA 186, 192 (1979).

29. *In re Petla*, 43 IBLA at 192–93.

30. *In re Lindgren*, 54 IBLA at 182.

31. *In re Bennett*, 92 IBLA 174, 177 (1986).

32. *Bicycle Trails of Marin v. Babbitt*, 82 F.3d 1445, 1452 (9th Cir.1996) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

33. *Id.*

34. *Id.* at 1452, 1454.

35. 43 U.S.C. § 270–3 (1970 ed.). The Act does not define "substantial use and occupancy."

answer, we turn to the regulation. The regulation does not directly answer the question either. It states that "such use and occupancy must be substantial actual possession of the land, at least potentially exclusive of others."[36] Since the definition of "substantial use and occupancy" is not clear from the statute or the regulation, we must then determine whether the IBLA's interpretation is unreasonable.

■■■ This court must give substantial deference to an agency's interpretation of its own regulations.[37] The court's task "is not to decide which among several competing interpretations best serves the regulatory purpose."[38] Rather, the court must defer to the agency's interpretation "unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."[39] We believe that the IBLA's interpretation is valid.

Appellants argue that the Department's interpretation runs counter to the intent of the Secretary at the time the regulation was adopted. They point to a 1964 Interior Department report referenced in the Federal Register when § 2561.0–5(a) was proposed.[40] According to the report, § 2561.0–5(a) "would expressly permit consideration of . . . native custom and mode of living . . . in determining whether an applicant for an allotment has shown substantially continuous use and occupancy of the land for a period of five years."[41] The 1964 report also states: "The proposed regulations represent a change of existing policy concerning the allotment of land to Alaskan natives. In addition to occupancy according to the standards of the white settler, the proposed regulations recognize occupancy according to the standards of the native in his present culture and environment."[42]

Appellants contend that the 1964 report shows that the Interior Department intended to permit consideration of the fact that the rural Native Alaskans' mode of living was subsistence. Families, like those of the Appellants, used the land and its resources communally to carry on their way of life. According to Appellants, survival mandated that the members of their family work together to insure their livelihood and well-being. In that regard, no one member of a family can ever be considered "independent." Appellants appear to argue that this evidence of the Department's intent at the time of § 2561.0–5(a)'s promulgation compels the conclusion that applicants need not prove personal use and occupancy independent of immediate family members.

■ While Appellants advance a plausible interpretation of § 2561.0–5(a), it is not the only reasonable interpretation and does not compel us to strike down the IBLA's interpretation. The right to an allotment is personal to the applicant and not a communal right.[43] It is reasonable to require the applicant to show hallmarks of personal use independent of any family members. It is evident that at certain

---

**36.** 43 C.F.R. § 2561.0–5(a).

**37.** *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

**38.** *Id.*

**39.** *Id.* (quotation marks and citation omitted).

**40.** *See* 30 Fed.Reg. 3710 (Mar. 20, 1965).

**41.** 71 Dept. Int. Rep. 340, 342 (Sept. 21, 1964).

**42.** *Id.*

**43.** *In re Bouwens,* 46 IBLA 366, 368 (1980). *See also In re Bennett,* 92 IBLA at 176 (noting that purpose of allotment acts was to break up the traditional communal society by granting individual allotments that would become homesteads).

ages, an allotment applicant under the control and supervision of his parents cannot be said to be capable of engaging in the use and occupancy required by the ANAA. A child visiting the land with a parent or relative is not capable, solely by virtue of his or her presence, to lay personal claim to the land to the exclusion of others.

Even though exclusive use is a standard of occupancy recognized by white settlers and not part of the Alaskan native culture that is supported by the 1964 report, the report did not completely disavow occupancy according to the standards of the white settler; it merely stated that "[i]n addition to [those] standards ... the proposed regulations recognize occupancy according to the standards of the native in his present culture." [44]  Nor is the 1964 report rendered meaningless by the IBLA's requirement that applicants prove personal use and occupancy independent of immediate family members. Consistent with the 1964 report, consideration is still given to native custom and culture when deciding what *types* of uses (i.e., berry picking, hunting, fishing, winter homesteading) are sufficient to establish a right to an allotment.[45]

We also note that the decisions in the *Shields* and *Akootchook* class actions support our holding. Those were the only other occasions on which we reviewed IBLA decisions relating to allotment claims under the same regulation. We affirmed the IBLA's decisions, giving deference to the administrative interpretation reflected in those decisions.[46]  We held that applicants could not rely on their ancestors' use to qualify for an allotment but must demonstrate their own personal use. Because we concluded that the IBLA's interpretations of "use and occupancy"

were reasonable in those earlier cases, it seems logical that we would give them deference in this situation as well.

■  After concluding that the IBLA's interpretation of the "substantial use and occupancy" standard is valid, we now examine whether the IBLA's decisions on the merits were well supported by substantial evidence in the record in each case. Each Appellant testified at length about his or her use of the land, but in each instance, the use was as a dependent minor in the company of parents. None of the Appellants made a showing that despite his or her age, the use and occupancy was somehow independent of the parents' use and occupancy. Because none of the Appellants could establish personal use independent of other family members, the IBLA's denial of all five applications for allotments was not arbitrary and capricious or an abuse of discretion.

## CONCLUSION

The Department's interpretation of its own regulation is entitled to deference. The record fully supports the decisions on the merits. Therefore, the district court's judgment dismissing the case is AFFIRMED.

AFFIRMED.

---

**44.** 71 Dept. Int. Rep. at 342.

**45.** *See, e.g., George and Daniel Akootchook,* 130 IBLA 5, at 6, 7.

**46.** *Shields,* 698 F.2d at 990; *Akootchook,* 747 F.2d at 1321.