PHILBROOK, COMMISSIONER, DEPARTMENT
OF SOCIAL WELFARE *v.* GLODGETT ET AL.

No. 73–1820.  Argued March 24–25, 1975—Decided June 9, 1975*

*Together with No. 74–132, *Weinberger, Secretary of Health,
Education, and Welfare* v. *Glodgett et al.,* also on appeal from the
same court.

REHNQUIST, J., delivered the opinion for a unanimous Court.

*William L. Patton* argued the cause for appellant in No. 74–132. With him on the briefs were *Solicitor General Bork, Assistant Attorney General Hills, Acting Assistant Attorney General Jaffe, Leonard Schaitman, Anthony J. Steinmeyer,* and *John B. Rhinelander. David L. Kalib,* Assistant Attorney General of Vermont, argued the cause for appellant in No. 73–1820. With him on the brief were *Kimberly B. Cheney,* Attorney General, and *Dean B. Pineles,* Assistant Attorney General.

*Richard S. Kohn* argued the cause and filed a brief for appellees in both cases.

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

In these consolidated appeals we are called upon to construe a provision of the Social Security Act of 1935 (Act), as amended, and to ascertain whether a Vermont welfare

regulation impermissibly conflicts with that provision. A three-judge District Court held that it did, 368 F. Supp. 211 (Vt. 1973), and we noted probable jurisdiction in the appeal of appellant Philbrook, Commissioner of the Vermont Department of Social Welfare, in No. 73–1820, and postponed consideration of the question of jurisdiction in the appeal of appellant Weinberger, Secretary of Health, Education, and Welfare, in No. 74–132. 419 U. S. 963 (1974). Philbrook's appeal presents only the question of whether the Vermont welfare regulation in question conflicts with § 407 (b) (2) (C) (ii) of the Act, as amended, 42 U. S. C. § 607 (b) (2) (C) (ii), while the Secretary's appeal presents the additional issue of whether the District Court correctly concluded that it had jurisdiction over the Secretary under the doctrine of pendent jurisdiction.

## I

In Title IV of the Act, 49 Stat. 627, Congress enacted the Aid to Dependent Children program,[1] through which federal funds would be granted to qualifying States in order to provide aid to dependent children. The term "dependent child" was originally defined to include only children whose deprivation was caused by "the death, continued absence from the home, or physical or mental incapacity of a parent,"[2] but in 1961 Congress expanded the definition of dependent

---

[1] The name of the program was changed in 1962 to "Aid and Services to Needy Families with Children," and the name of the assistance provided thereunder became "Aid to Families with Dependent Children" (AFDC). Pub. L. 87–543, 76 Stat. 185. Vermont has elected to call its participating program Aid to Needy Families with Children (ANFC).

[2] § 406 (a) of the Act, 49 Stat. 629. See generally Burns v. Alcala, 420 U. S. 575 (1975).

child to include children whose deprivation was caused by the unemployment of a parent.[3] This program was enacted on an experimental basis[4] and gave States the authority to define "unemployment" and to deny AFDC benefits in whole or in part if the unemployed parent received unemployment compensation during the relevant period. In 1968 Congress elected to make the unemployed-parent program permanent,[5] but in response to problems that had arisen during the trial period, Congress retracted some of the authority that had formerly been delegated to the States.[6] Under these and other

---

[3] 75 Stat. 75. See 1961 Public Papers of the Presidents of the United States (John F. Kennedy) 46–47; H. R. Rep. No. 28, 87th Cong., 1st Sess. (1961); S. Rep. No. 165, 87th Cong., 1st Sess. (1961); H. R Conf. Rep. No. 307, 87th Cong., 1st Sess. (1961).

[4] The 1961 legislation was scheduled to expire on June 30, 1962, but it was extended for a five-year period in 1962, 76 Stat. 193, and for one more year in 1967, 81 Stat. 94.

[5] 81 Stat. 882; H. R. Rep. No. 544, 90th Cong., 1st Sess., 17, 107–109, 175–176 (1967); S. Rep. No. 744, 90th Cong., 1st Sess. (1967); H. R. Conf. Rep. No. 1030, 90th Cong., 1st Sess. (1967).

[6] Under the 1961 legislation, the States had adopted such varying definitions of "unemployment" that uniform administration of the program became impossible; in some instances the States had adopted such a broad definition as to have "gone beyond anything that the Congress originally envisioned." H. R. Rep. No. 544, supra, at 108. See Statement of Wilbur J. Cohen, Undersecretary of the Department of Health, Education, and Welfare, Hearings on H. R. 12080, before the Senate Committee on Finance, 90th Cong., 1st Sess., 268–269 (1967). Congress responded by enacting a federal definition of "unemployment" which required States to include fathers who had "a substantial connection with the work force," H. R. Rep. No. 544, supra, at 17, and exclude families if the unemployed father "receives unemployment compensation under an unemployment compensation law of a State or of the United States." 81 Stat. 883. The Senate had preferred to retain the option giving the States the discretion to deny AFDC benefits to families receiving unemployment compensation, S. Rep. No. 744,

changes that also became effective in 1968,[7] the expanded definition of "dependent child," § 407 (a) of the Act, applies only if participating States deny aid

"to families with dependent children to any child or relative specified in subsection (a) of this section—

.        .        .        .        .

"(ii) with respect to any week for which such child's father receives unemployment compensation under an unemployment compensation law of a State or of the United States." § 407 (b)(2)(C) (ii) of the Act, 42 U. S. C. § 607 (b)(2)(C)(ii).

To qualify for funding under this unemployed-father program, Vermont promulgated Welfare Regulation 2333.1, which provides in relevant part:

"An 'unemployed father' is one whose minor children are in need because he is out of work, is work-

___

*supra,* at 28, but receded at conference, H. R. Conf. Rep. No. 1030, *supra,* at 57.

Congress also expressed its displeasure with the state practice which had made "families in which the father is working but the mother is unemployed eligible," H. R. Rep. No. 544, *supra,* at 108, and restricted the program to children of unemployed *fathers.*

[7] In the next session the Senate tried again to modify the mandatory exclusion of § 407 (b). See n. 6, *supra.* Under the major modifications made at the beginning of 1968, a family that received unemployment compensation for any part of a month was automatically disqualified from AFDC assistance for the entire month. The Senate sought to restore to the States the option to permit or deny AFDC assistance to families in this situation, S. Rep. No. 1014, 90th Cong., 2d Sess., 9 (1968). A compromise was reached in Conference by which the mandatory exclusion was retained in concept but relaxed in application: a father receiving unemployment compensation during any month would be denied AFDC assistance but only with respect to the weeks for which unemployment compensation was received. 82 Stat. 273. See H. R. Conf. Rep. No. 1533, 90th Cong., 2d Sess., 49 (1968).

ing part-time, or is not at work due to an industrial dispute (strike), for at least 30 days prior to receiving assistance, provided that:

.            .            .            .

"(3) He is not receiving Unemployment Compensation during the same *week* as assistance is granted."

Appellees are the parents and minor children of Vermont families whose ANFC assistance was terminated or whose applications for assistance were rejected because the fathers were receiving unemployment compensation; in each instance the amount of money received by the family in unemployment compensation was less than would have been received under the ANFC program. Appellees filed suit against Commissioner Philbrook and Secretary Weinberger to enjoin the enforcement of the federal statute and state regulation. The three-judge court, finding that it had jurisdiction over the parties by virtue of 28 U. S. C. § 1343 (3), concluded "from the language of the statute that the disqualifying factor is actual payment, rather than mere eligibility for unemployment compensation." 368 F. Supp., at 217. Under this construction of § 407 (b)(2)(C)(ii) of the Act, 42 U. S. C. § 607 (b)(2)(C)(ii), a father who otherwise qualified had an option to receive either an unemployment compensation check or ANFC assistance, whichever was greater, and the Vermont regulation could not be applied so as to conflict with this construction of the federal statute. An injunction to this effect was entered, and both the state and federal parties have appealed.[8]

---

[8] At oral argument a question arose regarding the jurisdiction of this Court over the appeals, 28 U. S. C. § 1253, and the parties have filed supplemental briefs on this point. On authority of *Gonzalez* v. *Automatic Employees Credit Union,* 419 U. S. 90 (1974), and *MTM, Inc.* v. *Baxley,* 420 U. S. 799 (1975), appellant Weinberger contends that any appeal from the District Court's judgment should

## II

The appellants do not contest, as indeed they could not, that § 407 (b)(2)(C)(ii) speaks in terms of a "father [who] *receives* unemployment compensation" rather than a "father [who] is *eligible* to receive unemployment compensation." They do contend, however, that the District Court's construction of that section is wholly at odds with the premise underlying the AFDC program and with the approach to non-AFDC resources dictated by § 402 (a)(7) of the Act, 42 U. S. C. § 602 (a)(7). "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States* v. *Heirs of Boisdoré,* 8 How. 113, 122 (1849); *Richards* v. *United States,* 369 U. S. 1, 11 (1962); *Chemehuevi Tribe of Indians* v. *FPC,* 420 U. S. 395, 402–403 (1975). Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will. The language of § 407 (b)(2)(C)(ii) certainly leans toward the construction adopted by the

have been taken to the Court of Appeals; appellant Philbrook and appellees contend that the appeals are properly before this Court.

In *Hagans* v. *Lavine,* 415 U. S. 528 (1974), this Court indicated that it was the preferred practice for a single judge, when presented with both statutory and constitutional grounds for decision, to resolve the statutory claim before convening a three-judge court. The District Court in this case was unable to proceed in that manner because appellees raised only constitutional contentions in their complaint, App. 10, and raised their statutory contention, for the first time, at oral argument before the three-judge court. Tr. of Oral Arg. before the United States District Court for the District of Vermont 42–44 (Mar. 5, 1973). Appellant Weinberger urges us to reconsider our decision in *Engineers* v. *Chicago, R. I. & P. R. Co.,* 382 U. S. 423 (1966), in which we held that, if a three-judge court is convened and decides a case on statutory grounds, the judgment may be appealed to this Court under 28 U. S. C. § 1253, but we decline to do so.

District Court, but "[i]t is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *Church of the Holy Trinity* v. *United States,* 143 U. S. 457, 459 (1892).

In order to qualify for federal assistance under the AFDC program, a state plan must "provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children." § 402 (a)(7) of the Act, 42 U. S. C. § 602 (a)(7). Further force to this statutory command has been applied by regulations requiring state agencies to "carry out policies with reference to applicants' and recipients' potential sources of income that can be developed to a state of availability." 45 CFR § 233.20 (a)(3)(ix) (1974). It flies in the face of this statutory scheme, argue appellants, to construe a provision of the same Title so as to permit a person to decline resources, for which he is eligible, in order to qualify for AFDC assistance. See *Shea* v. *Vialpando,* 416 U. S. 251 (1974). This anomaly is compounded by the violence done to the intended operation of unemployment compensation programs by the District Court's construction. Unemployment compensation programs, financed by employer contributions, are intended to operate without regard to need and be available to a recipient as a matter of right. See *California Dept. of Human Resources Development* v. *Java,* 402 U. S. 121 (1971). The appellants contend that AFDC should not be available when unemployment compensation, "the first line of defense," can be obtained.[9]

[9] Appellant Philbrook also argues that the District Court's construction operates "to shift drastically the burden of supporting families of unemployed fathers from the unemployment compensation program to the AFDC program." Brief for Appellant Philbrook 27. Such a shift from private-sector to public-sector

An argument based on intersectional harmony might have considerable force in other circumstances, but we find it unpersuasive as applied to appellants' case. Under § 402 (a)(7), an applicant's other income and resources are taken into account in determining the applicant's need. If the amount "is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference." *Shea* v. *Vialpando, supra,* at 254. If § 407 (b)(2) had been intended to fit smoothly into the AFDC program, then assistance payments should be *reduced* by the amount of unemployment compensation received by a father; this much the federal appellant concedes.[10] But Congress has expressly provided otherwise: receipt of unemployment compensation results in *termination* of AFDC benefits. The appellants are simply incorrect when they characterize their construction of § 407 (b) (2)(C)(ii) as consistent with the overall pattern of the AFDC program while assailing the District Court's interpretation as fundamentally disruptive; the fact of the matter is that neither construction is harmonious with the program's general approach to income and resources.

Appellants contend that the legislative history of the Social Security Amendments of 1968 supports their position that "an unemployed father would be required to exhaust the unemployment compensation resource" before becoming entitled to receive AFDC assistance.[11]

---

financing distorts the intended relationship between the unemployment compensation and AFDC programs, and gives private employers a windfall gain since their financial obligation under the unemployment compensation program is a function of amounts paid out in claims. *Ibid.*

[10] Brief for Appellant Weinberger 19 n. 6.

[11] *Id.,* at 21. Appellant Secretary concedes that Congress did not intend AFDC assistance to be terminated immediately upon a

They rely upon a statement in the Conference Report as proof that when Congress used the term "receives" in § 407 (b)(2)(C)(ii) it intended to include within that term persons who were eligible to receive unemployment compensation:

> "Section 407 of the Social Security Act, as amended by section 203 (a) of the House bill, defined an unemployed father (for purposes of determining the eligibility of his children for AFDC) so as to exclude fathers who do not have 6 or more quarters of work in any 13-calendar-quarter period ending within one year prior to the application for aid, and fathers who receive (*or are qualified to receive*) any unemployment compensation under State law.
>
> "The Senate amendments removed these exclusions, and restored the provision of present law under which a State may at its option wholly or partly deny AFDC for any month where the father receives unemployment compensation during the month. . . .
>
> "The Senate recedes . . . ." H. R. Conf. Rep. No. 1030, 90th Cong., 1st Sess., 57 (1967) (emphasis added).

We have carefully reviewed the context of that statement in view of the positions of the House and Senate on § 407, and we agree with appellees that the above-

---

father's eligibility for unemployment compensation. Congress recognized that there was a delay between application for unemployment compensation and receipt of the first check. During this period, even under the Secretary's construction, AFDC assistance is available. The Secretary's position is that a person who is eligible for unemployment compensation must take the steps necessary to receive such payments and, upon receipt, AFDC terminates. A father may not, in the Secretary's opinion, decline unemployment compensation or refuse to apply for such compensation when he is eligible. *Id.*, at 16–17, n. 4.

quoted language is ambiguous at best. It seems more likely that the Conference Committee was referring to § 407 (b)(1)(C) of the Act [12] than to § 407 (b)(2)(C) (ii). Although both Houses of Congress agreed in 1968 that a federal definition of unemployment was necessary, they disagreed about the considerations that should be embodied in that definition. The House sought to limit participation under the unemployed-father provision to fathers who had "a substantial connection with the work force." H. R. Rep. No. 544, 90th Cong., 1st Sess., 17 (1967).

> "[I]t is the intent of your committee to exclude from the program those fathers who.have not been in the labor force, or whose attachment to the labor force has been casual." *Id.*, at 108.

---

[12] Section 407 (b)(1) of the Act, 42 U. S. C. § 607 (b)(1), provides:

"(b) The provisions of subsection (a) of this section shall be applicable to a State if the State's plan approved under section 602 of this title

"(1) requires the payment of aid to families with dependent children with respect to a dependent child as defined in subsection (a) in this section when—

"(A) such child's father has not been employed (as determined in accordance with standards prescribed by the Secretary) for at least 30 days prior to the receipt of such aid,

"(B) such father has not without good cause, within such period (of not less than 30 days) as may be prescribed by the Secretary, refused a bona fide offer of employment or training for employment, and

"(C)(i) such father has 6 or more quarters of work (as defined in subsection (d)(1) of this section) in any 13-calendar-quarter period ending within one year prior to the application for such aid or (ii) he received unemployment compensation under an unemployment compensation law of a State or of the United States, or he was qualified (within the meaning of subsection (d)(3) of this section) for unemployment compensation under the unemployment compensation law of the State, within one year prior to the application for such aid."

Although the Senate and the Administration did not favor requiring a substantial connection with the work force as a condition for inclusion under the unemployed-father program,[13] the House version prevailed at Conference. In implementing the House standard, Congress demonstrated an awareness of the difference between receipt of unemployment benefits and eligibility for such benefits. In defining the requisite prior attachment to the employment market, Congress included fathers who had

> "6 or more quarters of work . . . in any 13-calendar-quarter period ending within one year prior to the application for such aid or (ii) . . . received unemployment compensation under an unemployment compensation law of a State or of the United States, or he was qualified (within the meaning of subsection (d)(3) of this section) for unemployment compensation . . . , within one year prior to the application for such aid." § 407 (b)(1)(C) of the Act, 42 U. S. C. § 607 (b)(1)(C).[14]

That Congress was not quite as discriminating in § 407 (b)(2)(C)(ii) conveys a good deal about its intent. It

---

[13] S. Rep. No. 744, *supra*, n. 5, at 28; Statement of Undersecretary Cohen, *supra*, n. 6, at 269.

[14] Section 407 (d)(3) of the Act, 42 U. S. C. § 607 (d)(3), provides:

"(d) For purposes of this section—

. . . . .

"(3) an individual shall be deemed qualified for unemployment compensation under the State's unemployment compensation law if—

"(A) he would have been eligible to receive such unemployment compensation upon filing application, or

"(B) he performed work not covered under such law and such work, if it had been covered, would (together with any covered work he performed) have made him eligible to receive such unemployment compensation upon filing application."

seems to us that the section from the Conference Report relied upon by appellants probably was directed to § 407 (b)(1)(C)(ii) rather than to the section at issue in these appeals.

The District Court correctly concluded "that a family eligible for ANFC benefits under [42 U. S. C. §] 607 can be excluded only for each week in which unemployment compensation is actually received by the father." 368 F. Supp., at 217. If, as appellants contend, § 407 (b)(2) (C)(ii) is inconsistent with the general scheme of the AFDC program or works to shift costs from the private to the public sector in contravention of prudent resource management, it is the legislative branch to which appeals for modification must be directed.

With the federal standard of eligibility thus understood, it is apparent that the Vermont definition of "unemployed father," which has been applied to exclude unemployed fathers who are eligible for unemployment compensation, conflicts with § 407 (b)(2)(C)(ii). Vermont "may not deny aid to persons who come within it in the absence of a clear indication that Congress meant the coverage to be optional." *Burns* v. *Alcala*, 420 U. S. 575, 580 (1975); *King* v. *Smith*, 392 U. S. 309 (1968); *Townsend* v. *Swank*, 404 U. S. 282 (1971); *Carleson* v. *Remillard*, 406 U. S. 598 (1972). See also *New York Dept. of Social Services* v. *Dublino*, 413 U. S. 405, 421–422 (1973). An important purpose of the 1968 amendments was to eliminate the variations in state definitions of unemployment, see n. 6, *supra*, and the Congress twice turned back attempts by the Senate to restore to States discretion in the coverage of the program. In these circumstances we find that Congress did not intend the coverage of § 407 to be optional once a State elected to participate. That portion of the judgment appealed from in No. 73–1820 is affirmed.

## III

The District Court held that 28 U. S. C. § 1343 (3) afforded jurisdiction over the Secretary under principles of pendent jurisdiction. We have previously characterized this question as "subtle and complex . . . with far-reaching implications." *Moor* v. *County of Alameda,* 411 U. S. 693, 715 (1973). See also *Christian* v. *New York Dept. of Labor,* 414 U. S. 614, 617 n. 3 (1974). This issue is the first of the "Questions Presented" in the Secretary's brief on the merits, but while the section of that brief devoted to argument does characterize the issue as "difficult and complex," it concludes that we need not decide the question. The Secretary reasons that if we rule in his favor on the merits of the statutory question, which he presents as the second question presented by this appeal and which is identical to the question presented by appellant Philbrook, the case should be remanded so that the District Court may decide appellees' constitutional challenges to the statute as herein construed; in that event the Secretary advises that "the government intends to end the jurisdictional controversy by filing a motion to intervene." Brief for Appellant Weinberger 13. On the other hand, the Secretary tells us that if we agree with the District Court and disagree with him on the merits of the statutory question, as to which jurisdiction over the state defendant was properly invoked, "the jurisdictional question with respect to the Secretary would become inconsequential since the Secretary as well as the State would, of course, administer the statute in accordance with this Court's interpretation." *Ibid.*

We do not believe that the Secretary's treatment of his role in this appeal, which seems cast more in terms of an *amicus curiae* than as a party challenging jurisdiction, provides an acceptable resolution of this question.

The Secretary's representation that he intends to abide by this Court's construction of the statute on the State's appeal does not in any strict sense of the word render moot the dispute between him and appellees. We are left therefore with a "subtle and complex question with far-reaching implications" going to the jurisdiction of the District Court over the Secretary, which was resolved by the District Court in favor of jurisdiction, but that has been inadequately briefed by the Secretary. This Court's Rule 40 (g).

Failure to comply with applicable Rules of this Court may result in the dismissal of an appeal of the defaulting party. *Sweezy* v. *New Hampshire,* 354 U. S. 234, 236 (1957); *Slagle* v. *Ohio,* 366 U. S. 259, 264 (1961); *Raley* v. *Ohio,* 360 U. S. 423, 435 (1959). Our only hesitancy in applying this principle to the Secretary's appeal arises because the issue goes to the jurisdiction of the District Court over the federal party, and we have repeatedly held that we must take note of want of jurisdiction in the district court even though neither party has raised the point. *Cutler* v. *Rae,* 7 How. 729, 731 (1849); *Mitchell* v. *Maurer,* 293 U. S. 237, 244 (1934); *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583, 588 (1939).

Application of the general rule that this Court has a duty to inquire into the jurisdiction of the district court would require that we address a complex question of federal jurisdiction notwithstanding the absence of substantial aid from the briefs of either of the parties. We believe, however, that the unusual context in which this appeal comes to us permits an exception to this general rule. Here the substantive issue decided by the District Court would have been decided by that court even if it had concluded that the Secretary was not properly a party to the suit, since appellant Philbrook was clearly a proper party under 28 U. S. C. § 1343 and the statu-

tory issues raised by appellees' claim against Philbrook were indistinguishable from those raised by their claim against the Secretary. Thus the only practical difference that resulted from the District Court's assumption of jurisdiction over the Secretary was that its injunction was directed against him as well as against appellant Philbrook. But the Secretary has announced, in his brief to this Court, that in the event the decision of the District Court on the statutory issue is affirmed, he intends to comply with it. The exercise of the District Court's jurisdiction over the Secretary in this case, therefore, has resulted in no adjudication on the merits that could not have been just as properly made without the Secretary, and has resulted in no issuance of process against the Secretary which he has properly contended to be wrongful before this Court.

The Secretary's appeal from the judgment in No. 74–132 is, therefore, dismissed.

*It is so ordered.*