### Glenn Young v. Department of Social Welfare
[431 A.2d 451]

No. 303-79

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed April 7, 1981

*Zander B. Rubin,* South Royalton Legal Clinic, and *Robert P. Gerety, Jr.,* Law Student (On the Brief), South Royalton, for Plaintiff.

*M. Jerome Diamond,* Attorney General, Montpelier, and *Steven B. McLeod,* Assistant Attorney General, Waterbury, for Defendant.

**Larrow, J.** Glenn Young, his wife and six children were recipients of ANFC. In 1978 the Department of Social Welfare requested that Young apply for veteran benefits. Young refused to apply for such benefits despite repeated warnings that failure to apply would result in a discontinuance of ANFC benefits. In January of 1979 Young received notice that his benefits would be discontinued in February. Young filed an appeal to the Vermont Human Services Board, and his benefits were continued pending its decision. The Vermont Human Services Board affirmed the Department's decision terminating ANFC benefits to the Youngs. Young is now appealing the decision of the Human Services Board.

Two questions have been certified to this Court from the Human Services Board. V.R.A.P. 13(d). The first certified question, dealing with the adequacy of the notice of termination, has been waived by Young and therefore need not be considered by this Court. The second certified question is whether the Board erred in affirming the Department's decision to terminate Young's ANFC benefits because of his failure to develop all potential sources of income.

The Department terminated ANFC benefits to the Youngs pursuant to Vermont Welfare Assistance Regulations §§ 2270, 2271. These regulations require that applicants or recipients of ANFC benefits apply for other benefits to which they might be entitled. The regulations further provide that a failure to apply will render the applicant or recipient ineligible for financial assistance.

The Department contends that these regulations are authorized by the directive of the Department of Health, Education and Welfare (now the Department of Health and Human Services) that "[A] state plan for . . . AFDC [Vermont's participating program is ANFC] . . . must . . . provide that the agency will establish and carry out policies with reference to the applicants' and recipients' potential sources of income that can be developed to a state of availability." 45 C.F.R. § 233.20(a)(3)(ix) (1979).

The arguments of the Department in the present case are similar to those presented, and rejected, in both *Philbrook* v. *Glodgett*, 421 U.S. 707 (1975), and *Shirley* v. *Lavine*, 365 F. Supp. 818 (N.D.N.Y. 1973), *aff'd sub nom., Lascaris* v. *Shirley*, 420 U.S. 730 (1975) (per curiam). In *Glodgett*, a Vermont regulation was applied in such a manner as to deny ANFC benefits to a family for any week during which the father was eligible for unemployment compensation. The Department in that case argued that 45 C.F.R. § 233.20(a)(3)(ix) required the exhaustion of other resources before the applicant became entitled to receive ANFC assistance. The Court rejected this argument, holding that mere eligibility for unemployment compensation was an insufficient ground to terminate ANFC benefits, and that the father was under no compulsion to accept unemployment compensation. In *Lascaris* a New York regulation required that AFDC recipients assist and cooperate in paternity or support actions against absent parents, under threat of termination of benefits. The regulation was held invalid as establishing a condition of eligibility which was in conflict with 42 U.S.C. § 602(a).

Although subsequent amendments to the Social Security Act have rendered the holdings of *Glodgett*, and *Lascaris*, nugatory insofar as unemployment compensation and cooperation in support proceedings are involved, see 42 U.S.C. §§ 607 (b)(2)(C)(ii), 602(a)(26), their reasoning remains compelling. Absent the type of congressional authorization that occurred subsequent to *Glodgett* and *Lascaris*, a state may not force an applicant or recipient, as a condition of eligibility, to seek or accept benefits from other sources in lieu of ANFC. See also *Townsend* v. *Swank*, 404 U.S. 282 (1971); *King* v. *Smith*, 392 U.S. 309 (1968).

While it is true that 45 C.F.R. § 233.20(a)(3)(ix) directs the Department to establish and carry out policies to develop potential sources of income, it does not by its own terms authorize termination of an ANFC grant to coerce cooperation. Cf. *Meyers* v. *Juras*, 327 F. Supp. 759 (D. Or.), *aff'd mem.*, 404 U.S. 803 (1971) (involving obtaining financial support from nonsupporting fathers). In fact 45 C.F.R. § 233.20(a)(3)(ix) imposes an obligation on the state to develop and carry out policies for the development of potential sources of income; it does not place any obligations on the applicant or recipient. This is precisely the same allocation of burden that existed in *Lascaris, supra. Rush* v. *Smith*, 573 F.2d 110, 116 (2d Cir. 1978).

█ The Department also argues that the children are not needy, simply because their father refused to apply for veteran's benefits. This argument also fails. While states are free to establish the standard of need, see *King* v. *Smith, supra*, 392 U.S. at 318–19, they are not permitted to regard income which is not actually available as meeting the standard of need that has been set. *Lewis* v. *Martin*, 397 U.S. 552 (1970).

In view of our recent decision in *Lavigne* v. *Department of Social Welfare*, 139 Vt. 114, 423 A.2d 842 (1980), a remand is necessary to determine the correct amount of retroactive payments owed to Young for the period of time in which he was entitled to benefits but did not receive them.

*Certified question number two is answered in the affirmative. The decision of the Human Services Board is reversed, and the case remanded for further proceedings consistent with the views expressed herein.*