In re Wallace Leon JOHNSON, and Alberta Dean Johnson, Debtors.

John C. McLEMORE, Trustee, Plaintiff,

v.

LIBERTY STATE BANK, Defendant.

Bankruptcy No. 283–00335.
Adv. No. 283–0557.

United States Bankruptcy Court,
M.D. Tennessee.

April 25, 1984.

Beth R. Derrick, Waddey & Newport, Nashville, Tenn., for Liberty State Bank.

John C. McLemore, McMackin, Garfinkle & McLemore, Nashville, Tenn., Trustee.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The issue is whether a security interest in a semitrailer is perfected by filing with the Secretary of State or by notation on a certificate of title. Tennessee law controls. After consideration of the briefs, arguments, stipulations, and applicable authority, the court holds that a security interest in a semitrailer is perfected by filing with the Secretary of State.

The following constitute findings of fact and conclusions of law as required by Rule 7052 of the Bankruptcy Rules.

The facts are stipulated. On August 24, 1982, Wallace Leon and Alberta Dean Johnson ("debtors") granted a security interest in a 25-ton "lowboy" trailer to Liberty State Bank ("Bank") as collateral for a loan. The "lowboy" trailer is a "semitrailer" as defined by TENN. CODE ANN.

§ 55–1–105 [1] and is "equipment"·as defined by TENN. CODE ANN. § 47–9–109(2).[2] The debtors used the semitrailer in their landscaping business to transport a bulldozer. On September 14, 1982, the Bank filed a UCC–1 identifying the semitrailer as collateral with the Tennessee Secretary of State. No certificate of title has ever been issued for the semitrailer.

On February 3, 1983, the debtors filed a voluntary Chapter 7 petition. The Bank was scheduled as a creditor with a security interest in the semitrailer. On August 5, 1983, the trustee moved to set aside the Bank's security interest. The motion was subsequently converted to a complaint to determine the validity and priority of the Bank's security interest. The matter is before the court on cross-motions for summary judgment.[3]

The trustee argues that filing with the Secretary of State is inadequate to perfect a security interest in a semitrailer because security interests in certain collateral can only be perfected by notation of the lien on a certificate of title. TENN. CODE ANN. § 47–9–302 provides in relevant part that:

(3) The filing provisions of this chapter do not apply to a security interest in property subject to a statute:

  ·  \*    \*    \*    \*    \*    \*

---

1. TENN. CODE ANN. § 55–1–105 provides in relevant part that:

(b) The word "semitrailer" shall mean every vehicle without motive power and not a motor vehicle as herein defined, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle.

"Vehicle" and "motor vehicle" are separately defined in TENN. CODE ANN. § 55–1–103:

(a) The word "vehicle" shall mean every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

(b) The words "motor vehicle" shall mean every vehicle which is self-propelled excluding motorized bicycles and every vehicle which is not propelled by electric power obtained from overhead trolley wires. The words "motor vehicle" shall also mean any mobile home or house trailer as hereinafter defined in § 55–1–105(d).

(b) of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

(4) *A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title* or a duplicate thereof by a public official. (emphasis added).

The trustee asserts that the "Tennessee Motor Vehicle Title and Registration Law" requires registration and titling of semitrailers and, therefore, provides the exclusive method of perfecting a security interest in a semitrailer. The Bank responds that the semitrailer is not subject to the certificate of title requirement and that a security interest in a semitrailer used as equipment can be perfected by filing a UCC–1 with the Secretary of State. The parties have stipulated that if filing with the Secretary of State is appropriate, the Bank has the superior interest in the semitrailer and that if noting the lien on a certificate of title is required, the Bank is unperfected and the trustee wins pursuant to 11 U.S.C.A. § 544 (West 1979).[4]

A "semitrailer" is a subset of "vehicle" but not of "motor vehicle."

2. TENN. CODE ANN. § 47–9–109 provides in pertinent part that:

Goods are:

    \*    \*    \*    \*    \*    \*

(2) "equipment" if they are used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods.

3. The semitrailer was delivered to the Bank pending the outcome of this proceeding.

4. 11 U.S.C.A. § 544 (West 1979) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

The "Tennessee Motor Vehicle Title and Registration Law," TENN. CODE ANN. § 55-1-101 *et seq.* does not explicitly require certificates of title for semitrailers. Only "motor vehicles" are facially subject to the certificate of title requirement.[5] Semitrailers are, however, required by Tennessee law to be *registered.*[6] At least one federal court has concluded that all vehicles subject to registration in Tennessee must also be titled.[7] The holding is premised upon TENN. CODE ANN. § 55-3-103(a) which provides that:

(a) Every owner of a vehicle, *subject to registration hereunder* and for which

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists.

**5.** TENN. CODE ANN. § 55-3-101(a) provides that:

(a) Every motor vehicle or motorized bicycle, as defined in chapter 8 of title 55, when driven or moved upon a highway, and every mobile home or house trailer when occupied shall be subject to the registration and certificate of title provisions of chapters 1-6 of this title.

**6.** TENN. CODE ANN. § 55-4-113(6) provides that:

*Freight trailers and semitrailers used primarily for hauling freight shall be registered* and in addition to the tax herein prescribed for trucks and truck tractors there shall be imposed on vehicles so classified a registration tax of ten dollars ($10.00). (emphasis added).

The Bank argues that the semitrailer is not subject to the registration requirements because not used primarily for hauling freight. The semitrailer is used principally to transport a bulldozer to various jobsites in the debtors' business. "Freight" is broadly defined in TENN. CODE ANN. § 55-1-118.

The word "freight" shall mean any kind of property which may be carried by motor vehicle over the streets and highways by either public or private carrier.

The bulldozer is "freight" as contemplated by the statute. The registration section does not provide that only common carriers hauling freight are subject to the registration requirements. All vehicles that transport any object classifiable as "freight" must be properly registered.

**7.** This court has not previously addressed whether semitrailers are required to have certif-

no certificate of title has ever been issued by the division, shall make application to the county court clerk of the county wherein the vehicle is to be registered. (emphasis added).

The United States District Court for the Eastern District of Tennessee held that "hereunder" as used in § 55-3-103(a) means that any vehicle required to be registered under any of the subchapters of the "Tennessee Motor Vehicle Title and Registration Law" must also have a certificate of title. *Fruehauf Corp. v. Sexton,* 18 B.R. 733, 734 (E.D.Tenn.1982). The trustee urges this interpretation.[8]

icates of title and whether perfection can only occur by lien notation. In cases where the certificate of title requirement was not raised by the parties, however, the court has noted that filing with the Secretary of State is appropriate to perfect security interests in semitrailers used as equipment. *See Coble Systems, Inc. v. Coors of the Cumberland, Inc.,* 19 B.R. 313, 320 (Bkrtcy.M.D.Tenn.1982); *Cookeville Production Credit Association v. Frazier,* 16 B.R. 674, 682 (Bkrtcy.M.D.Tenn.1981).

**8.** The Attorney General for the State of Tennessee has considered this position and concluded that "there exists a confusion in the meager case law in this area." Opinion of the Attorney General of Tennessee, 22 U.C.C.Rep.Serv. (CALLAGHAN) 210, 213 (Nov. 19, 1976). The confusion is illustrated by the case law from the United States District Court for the Eastern District of Tennessee. The district court held that filing with the Secretary of State is inadequate to perfect a security interest in a semitrailer. *Fruehauf Corp. v. Sexton,* 18 B.R. 730 (Bkrtcy.E.D.Tenn.1981) *aff'd,* 18 B.R. 733, 734 (E.D.Tenn. 1982). *Fruehauf,* however, neither cites nor expressly overrules the contrary holding in *In re Lakeland Homes, Inc.,* 11 U.C.C.Rep.Serv. (CALLAGHAN) 247 (E.D.Tenn.1972) (under Tennessee law, a lowboy trailer used by a manufacturer to transport boats is not subject to the certificate of title provisions of Tennessee law and consequently, the bank's security interest was perfected by filing a financing statement with the Secretary of State). In frustration, the Attorney General concluded that "the perfection of a security interest in semi-trailers and freight-trailers would require *both* a notation of lien on the certificate of title *and* the filing of a UCC-1 financing statement." 22 U.C.C.Rep.Serv. (CALLAGHAN) at 214. (emphasis added). Although it would be prudent, considering the mobile nature of the collateral, for a secured party to file with the Secretary of State *and* note the lien on the certificate of title, this court finds no

Since the decision in *Fruehauf Corp. v. Sexton*, the Tennessee Court of Appeals, in a case involving "lowboy trailers," has held that "T.C.A. § 55–3–101, *et seq.* pertains only to motorized vehicles and there is no requirement that detachable trailers be separately titled in this state." *Williams v. Williams Brothers, Inc.*, 9 TAM 14–24 slip op. at 4, (Tenn.Ct.App.1984).[9] This interpretation of the confusing (if not contradictory) Tennessee title and registration laws by an appellate court of the State of Tennessee is entitled to great deference. *Bell v. State of Maryland*, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964); *Gwinn v. Deane*, 613 F.2d 1, 3 (1st Cir.1980); *United States v. City of St. Louis*, 597 F.2d 121, 124 (8th Cir.1979); *Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir.1974). Analysis of the statutory scheme supports the view that the certificate of title requirement was not intended to apply to semitrailers.

A review of the Tennessee law is guided by recognized principles of statutory construction. Interpretation of a statute should not hinge on an isolated clause in a particular section, but should encompass the entire statute as well as the policies and objectives behind the statute. *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1973); *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962); *Environmental Defense Fund v. T.V.A.*, 468 F.2d 1164, 1173 (6th Cir.1972). A statute should be interpreted to foster the purpose of the legislation, *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1091 (6th Cir.1981); *Jackson v. T.V.A.*, 462 F.Supp. 45 (E.D.Tenn.) *aff'd*, 595 F.2d 1120 (6th Cir.1979), and should not be extended or enlarged by implication so as to embrace

matters not specifically covered. *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1091 (6th Cir.1981); *National Life & Accident Insurance Co. v. United States*, 381 F.Supp. 1034 (M.D.Tenn.) *aff'd*, 524 F.2d 559 (6th Cir.1974). An interpretation may be within the *letter* of the statute, yet not appropriate because outside the intention of the enacting body. *Philbrook v. Glodgett*, 421 U.S. 707, 714, 95 S.Ct. 1893, 1898–99, 44 L.Ed.2d 525 (1975); *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

The scope of Chapter 3 of Title 55 of the Tennessee Code is limited to titling requirements for "motor vehicles." The use of the term "motor vehicle" rather than "vehicle" applies the registration requirement to a class smaller than all the possible vehicles. Other subsections of Chapter 3 indicate that the Tennessee legislature did not intend to require certificates of title for all registered vehicles:

1. Tennessee law requires a certificate of title to contain information descriptive of most "motor vehicles" but meaningless or unavailable for semitrailers. TENN. CODE ANN. § 55–3–114 provides in relevant part:

(b)(1) All certificates of title shall be numbered numerically and shall contain upon the face thereof a description of the vehicle including the make, model, type of body, serial number of the vehicle and the engine or other number of the vehicle and, in addition thereto, a statement of the owner's title and of all liens and encumbrances upon the vehicle therein described, whether possession is held by the owner under a contract of conditional sale or other agreement and the number of the last certificate of title issued for the same vehicle and such other informa-

---

such dual filing requirement in the Tennessee statutes. As indicated *infra.*, the earlier decision of Judge Bare in *Lakeland Homes, Inc.*, appears to be the correct interpretation.

**9.** The court also noted in its opinion that:
   The Defendants also called the county clerk who testified that although there was no re-

quirement in Tennessee for trailers to be licensed or titled, this was a requirement in other states. It was the practice in Tennessee to get a title to a trailer if the owner desired a license plate for use in other states.
*Williams v. Williams Brothers, Inc.*, 9 TAM 14–24 slip op. at 4 (Tenn.Ct.App.1984).

tion as may be determined to be necessary by the commissioner.

2. TENN. CODE ANN. § 55-3-102 makes it a misdemeanor to operate off-highway motor vehicles, mobile homes, and house trailers without certificates of title, but makes no mention of untitled semitrailers.

3. TENN. CODE ANN. § 55-3-118 provides guidelines for the transfer of certificates of title for "motor vehicles" but not other types of vehicles.

4. TENN. CODE ANN. § 55-3-123 provides for delivery of a certificate of title upon which a lien is noted only for "motor vehicles:"

When any new lien, other than a lien dependent solely upon possession, or a lien of the state for taxes established pursuant to chapter 60 of title 67, is placed on any *motor vehicle coming within the title provisions of chapters 1-6 of this title* in a transaction not involving any change of ownership, the owner shall deliver, his certificate of title, if in his possession, on to the lienor who shall forward the same, together with the required fee for noting his lien thereon. (emphasis added).

5. TENN. CODE ANN. § 55-3-126 provides that noting the security interest on the certificate of title is the exclusive method of perfection only for "motor vehicles" and other specific collateral.

(b) Notwithstanding any provisions of the law to the contrary, *the method provided in this section* and § 55-3-125 *of certifying a lien or incumbrance upon a motor vehicle, mobile home, house trailer or other mobile structure,* whether or not taxed as real property, subject to the provisions of chapters 1-6 of this title relative to the issuance of certificates of title shall be exclusive except as to liens depending upon possession and the lien of the state for taxes. (emphasis added).

6. TENN. CODE ANN. § 55-3-110 provides that "prior to the issuance of a certificate of title for the motor vehicle, the division ... shall determine, by computer or otherwise, if the vehicle has been stolen" but requires no similar investigation with regard to other types of vehicles.

7. TENN. CODE ANN. § 55-3-105 makes it unlawful for the Division of Motor Vehicles to accept an application for a certificate of title without proof of the sales tax, but the provision is limited to "motor vehicles."

8. TENN. CODE ANN. § 55-3-106 provides that the certificate of title requirement shall not apply to "motor vehicles" of the United States, the State of Tennessee, or non-profit institutions, but does not exempt other "vehicles" owned or operated by these entities.

9. TENN. CODE ANN. § 55-3-107 governing the issuance of certificates for use in lieu of sales tax receipt is limited to "motor vehicles."

■ Considering the statutory scheme as a whole, the most reasonable interpretation is to apply the certificate of title requirement only to motor vehicles. The phrase "subject to registration hereunder" in § 55-3-103(a) should not be given exaggerated significance by expanding the certificate of title requirement to all "registered" vehicles.

Accordingly, the court holds that a security interest in a semitrailer used by a debtor as equipment need not be noted on a title but may be perfected by filing a UCC-1 with the Secretary of State. Therefore, the Bank's security interest is superior to the interest of the trustee under 11 U.S.C.A. § 544 (West 1979).

An appropriate order will be entered.