**In the Matter of Donald D. SPEARS, Phyllis M. Spears, Engaged in Farming, Debtors.**

**Bankruptcy No. 86–3019–C.**

United States Bankruptcy Court, S.D. Iowa.

Jan. 26, 1987.

Reta Noblett-Feld and Dan Childers, Cedar Rapids, Iowa, for debtors.

James M. Hansen, Oskaloosa, Iowa, for the PCA.

ORDER ON REQUEST FOR
CONVERSION TO
CHAPTER 12

LEE M. JACKWIG, Bankruptcy Judge.

On December 12, 1986 the request for conversion to Chapter 12 filed by the debtors on November 28, 1986 and the resistance filed by the Production Credit Association of the Midlands (PCA) came on for hearing in Des Moines, Iowa. Reta Noblett-Feld appeared on behalf of the debtors. James M. Hansen appeared on behalf of the PCA.

At the time of the hearing, the debtors asked the court to convert their Chapter 11 case, which had been commenced on November 7, 1986, to a case under Chapter 12 pursuant to 11 U.S.C. § 1112(d) as amended by Section 256 of The Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, H.R. 5316, Public Law No. 99–554. Relying on 11 U.S.C. § 101(17)(A) as amended by Section 251 of the 1986 Amendments, the PCA resisted the debtors' request on the ground that the debtors did not meet the income standard of the "family farmer" test and therefore could not avail themselves of the Chapter 12 provisions. Pursuant in general to 28 U.S.C. § 157, the court *sua sponte* questioned whether a Chapter 11 case in existence on November 26, 1986, the effective date of Chapter 12, could be converted to a case under Chapter 12. The parties were given an opportunity to brief such issue. The debtors filed their brief on December 24, 1986; the PCA filed its brief on December 30, 1986, at which point the matter was considered fully submitted.

The conversion issue arises from a conflict between Section 302(c)(1) of the 1986 Amendments to the Bankruptcy Code which provides that "[t]he amendments made by subtitle B of title II [subtitle B contains the sum and substance of Chapter 12] shall not apply with respect to cases commenced under title 11 of the U.S.Code before the effective date of this Act" and the relevant conference committee comments which seemingly express the legislative intent that certain Chapter 11 and Chapter 13 cases, pending on November 26, 1986, be converted to Chapter 12. Under the subhead of "Applicability Of Chapter 12 To Pending Chapter 11 And 13 Cases", the conference report states:

> It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.

> Chief among the factors the court should consider is whether there is a substantial

likelihood of successful reorganization under Chapter 12.

> Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

Although the debtors acknowledge that Section 302(c)(1) of the Amendments may be interpreted to mean that Chapter 12 does not apply to cases pending on November 26, 1986, they contend that the language of Section 302(c)(1) amounts to a drafting error and should not take precedence over the congressional intent expressed in the conference report. In arguing that basic principles of statutory construction must yield to legislative intent that is both clear and contrary, the debtors rely on cases wherein the legislative intent is seemingly explicit and the question raised with respect to the statutory language either is misplaced—that is, the language is actually consistent with the intent—or is susceptible of varying inferences. *Newberger v. Commissioner of Internal Revenue*, 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed. 58 (1940); *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646, *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1478, 39 L.Ed.2d 568 (1974); *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158, 101 S.Ct. 2239, 2241, 68 L.Ed.2d 744 (1981); *United States Steelworkers v. Weber*, 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979); *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Parenthetically, it is noted that the PCA relies upon both *Newberger* and

*Ford Motor Credit Co.* in support of its argument that the statutory language of Section 302(c)(1) of the 1986 Amendments controls.

In formulating his dissenting opinion in *United States Steelworkers v. Weber*, 443 U.S. 193, 217, 99 S.Ct. 2721, 2734, 61 L.Ed.2d 480 (1979), then Chief Justice Burger observed that "[o]ften we have difficulty interpreting statutes either because of imprecise drafting or because legislative compromises have produced genuine ambiguities. But here there is no lack of clarity, no ambiguity." The Chief Justice subsequently cautioned:

> What Cardozo tells us is beware the "good result," achieved by judicially unauthorized or intellectually dishonest means on the appealing notion that the desirable ends justify the improper judicial means. For there is always the danger that the seeds of precedent sown by good men for the best of motives will yield a rich harvest of unprincipled acts of others also aiming at "good ends."

*Id.* at 220, 99 S.Ct. at 2735. Then Justice Rehnquist in his dissenting opinion in the same case also remarked upon the judiciary's duty to construe, not to rewrite, legislation. *Steelworkers*, at 221, 99 S.Ct. at 2736.

Unlike former Chief Justice Burger and now Chief Justice Rehnquist, who found the statute in issue clear and consistent with the legislative history despite the majority opinion, the undersigned is faced with a very clear statutory provision and an inconsistent report of legislative intent—at least with respect to conversion from Chapter 11 and Chapter 13 to Chapter 12.

Contrary to the trend during the first few years of the downturn in the farm economy, farm debtors in the Southern District of Iowa have been filing noticeably less Chapter 11 cases than Chapter 7 cases over the past two years. To one presiding over bankruptcy matters in this district, the failure of the conference report to discuss conversion to Chapter 12 from existing Chapter 7 cases was curious.

Clearly, Congress has provided for a conversion *per se* from Chapter 7, 11 and 13 cases to Chapter 12. Section 257 of the 1986 Amendments is entitled "Conforming Amendments". Subsection (q) amends existing 11 U.S.C. § 706 as follows:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> . . . .
>
> (c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests such conversion.

Subsection (v) so amends 11 U.S.C. § 1307 with respect to conversion from Chapter 13 cases:

> . . . .
>
> (d) Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 or 12 of this title.
>
> (e) The court may not convert a case under this chapter to a case under chapter 7, 11, or 12 of this title if the debtor is a farmer, unless the debtor requests such conversion.

Section 256 of the 1986 Amendments is captioned "Conversion From Chapter 11 To Chapter 12". It separately and solely amends existing 11 U.S.C. § 1112(d) to read:

> (d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—
>
> > (1) the debtor requests such conversion;
> >
> > (2) the debtor has not been discharged under section 1141(d) of this title; and
> >
> > (3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

Noticeably, the "equitable test" set forth in the conference report is specifically codified only with respect to Chapter 11. The standard arguably may be inferred and applied in a Chapter 13 situation because conversion is within the discretion of the court after notice and hearing. Importantly, the equitable standard would not apply in a Chapter 7 setting as directed by the clear statutory language of 11 U.S.C. § 706. Legislative history explains that giving a liquidation debtor a one-time absolute right of conversion to a reorganization or to a repayment plan case is based on the policy "that the debtor should always be given the opportunity to repay his debts ...". S.R. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5880.

Section 302 of the 1986 bankruptcy legislation sets forth the effective dates and directs the application of the amendments. Subsection (c) concerns the "Amendments Relating To Family Farmers". As stated earlier, Section 302(c)(1) indicates that the provisions of Chapter 12 are not available in cases in existence on November 26, 1986, the effective date of the Act pursuant to Section 302(a). The subsection makes no distinction with respect to Chapters 7, 11 and 13.

Traditionally, courts have held that there is no need to resort to legislative history when the statutory provision is clear and unequivocal on its face. *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575, *reh'g denied*, 368 U.S. 870, 82 S.Ct. 24 (1961); *Arkansas Valley Industries, Inc. v. Freeman*, 415 F.2d 713, 717 (8th Cir.1969). More recently the same courts have not relied solely on the "plain meaning" rule but have examined the legislative history, in particular conference committee reports, to insure that a statute is not being applied in a manner contrary to clear congressional intent. *Consumer Products Safety Comm. v. G.T.E. Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Sierra Club v. Clark*, 755 F.2d 608, 615 (8th Cir.1985). However, courts are not inclined to usurp a clear and direct statutory provision for am-

biguous or inconclusive legislative history. *Monterey Coal v. Fed. Mine Safety & Health Review*, 743 F.2d 589, 595 (7th Cir. 1984); *Squillacote v. U.S.*, 739 F.2d 1208, 1218 (7th Cir.1984); *Kratz v. Kratz*, 477 F.Supp. 463, 469 (D.C.Pa.1979).

There is no dispute that the statutory provision in issue is clear on its face. With respect to legislative intent, the conference committee report is at odds with the manner in which Sections 706, 1112 and 1307 of Title 11 were amended. The conference committee report discusses the court's duty to determine whether conversion is equitable in both Chapter 11 and Chapter 13 situations, but the 1986 Act actually codifies such requirement only with respect to Chapter 11. Indeed, the amendment of the existing statutory provision governing conversion of Chapter 11 cases was set forth in a separate section of the new legislation while amendments to similar conversion provisions for Chapter 7 and Chapter 13 were summarily treated within a section dealing with numerous conforming amendments. If the voting members of Congress specifically intended that the Chapter 12 provisions only should apply to Chapter 11 and Chapter 13 cases—not to Chapter 7 cases—in existence on November 26, 1986, the legislation upon which Congress voted should have contained a separate section for Chapter 13 conversions, as it did for Chapter 11 in Section 256 of the 1986 Act, and should have qualified Section 302(c)(1) of the 1986 Act to except Chapter 11 and Chapter 13 from the "prospective only" application of the Chapter 12 provisions. Moreover, the legislative history should have discussed any policy reasons behind treating Chapter 7 farm debtors differently from those in Chapter 11 and Chapter 13.

If the court were to ignore the clear and direct statutory language of Section 302(c)(1) and allow conversion in this case, any debtor seeking conversion from a Chapter 7 case in existence on the effective date to a Chapter 12 case could argue that Congress overlooked mentioning Chapter 7 in the conference committee report because the long-standing policy behind allowing

Chapter 7 conversions made a discussion of the equities of conversion inappropriate and, therefore, judicial "adjustment" of any oversight in drafting Section 302(c)(1) should benefit the Chapter 7 debtor to the same extent it benefits the Chapter 11 and Chapter 13 debtors. Presumably, creditors would counter by saying that Congress' omission of Chapter 7 conversions was intentional and that the language of Section 302(c)(1) was meant to apply to Chapter 7 cases at a minimum. The judiciary is left wondering further if Congress truly intended to treat the farm debtor who decided to file a Chapter 7 case to forestall anticipated creditor action in state court differently than the farm debtors who filed a Chapter 11 or Chapter 13 case for the same reason. (The debtor in this case did not wait the extra 19 days for the new legislation to take effect out of concern that the PCA was about to commence a state court action. Perhaps, any similarly situated farm debtor who chose to file a Chapter 7 case did so because realistically the Chapter 11 confirmation requirements could not be met and because the amount of debt exceeded the Chapter 13 ceilings.)

Since the Chapter 12 provisions sunset in seven years pursuant to Section 302(f) of the 1986 Act, it would be reasonable to presume that Congress intended to address the immediate farm economy problems across the country, which would include existing bankruptcy cases. However, given the distinctions that may be inferred in attempting to reconcile the statutory language and the legislative history, it is not reasonable to conclude without some serious doubt that Congress intended to treat debtors differently depending upon the chapters they chose to file or, alternatively, that Congress contemplated that all debtors would have an opportunity to request conversion even though there is a lack of an equity standard in a Chapter 7 context, which could seriously impact further on the nation's economy.

WHEREFORE, based on the foregoing analysis, the undersigned finds that Section 302(c)(1) of the 1986 Amendments to the Bankruptcy Code is clear on its face and that the contrary legislative history contained in the conference committee report is inconclusive in application.

THEREFORE, pursuant to Section 302(c)(1) of the 1986 Amendments to the Bankruptcy Code, the debtors' motion to convert their Chapter 11 case to a Chapter 12 case is denied.