UNITED STATES of America, Appellee,

v.

Manuel Octavio ADAMES, et
ano., Defendants,

Manuel Octavio Adames,
Defendant–Appellant.

No. 665, Docket 89–1426.

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1990.

Decided March 30, 1990.

Bennett M. Epstein, New York City
(Lawrence M. Herrmann, New York City,
of counsel), for defendant-appellant.

Jack Wenik, Asst. U.S. Atty. for E.D.
N.Y., Brooklyn, N.Y. (Andrew J. Maloney,
U.S. Atty. for E.D.N.Y., Kirby A. Heller,
Asst. U.S. Atty., Brooklyn, N.Y. of coun-
sel), for appellee.

Before VAN GRAAFEILAND, MINER
and WALKER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Manuel Adames appeals a sentence of
135 months incarceration and five years
supervised release imposed by the United
States District Court for the Eastern Dis-
trict of New York (Dearie, J.) following
Adames' plea of guilty to attempting to
possess with intent to distribute over 100
grams of a substance containing heroin.
We affirm.

In January 1989, after learning that
Adames was interested in purchasing large
amounts of heroin, the Drug Enforcement
Administration organized an undercover
operation in which DEA agents posed as
sellers of heroin rather than buyers.
Thereafter, DEA agents negotiated the
sale to Adames of 11 units of heroin for
$783,000. However, when the transfer
took place, approximately 85 percent of the
substance delivered to Adames was a place-
bo, and only 1,043 grams of it was heroin.
Following his arrest, Adames pled guilty.

Adames' presentence report calculated
his base offense level at 34, because the
transaction involved approximately 7.7 kilo-
grams. *See* Drug Quantity Table, Sentenc-
ing Guidelines § 2D1.1 (offense involving 3
to 9.9 kilograms of heroin results in base
offense level of 34). With a reduction of
two levels because of Adames' acceptance
of responsibility and a criminal history cat-
egory of I, Adames' sentencing range was
121 to 151 months. *See* Sentencing Table,
Sentencing Guidelines at Ch. 5, Pt. A.
Adames contends that the appropriate level
should have been based on a transaction
involving between one and two kilograms,
because that was the amount of heroin

Adames actually purchased. Adames also contends that his offense level should have been adjusted downward under Sentencing Guidelines § 3B1.2, because he was a minor or minimal participant in the transaction. However, the district court adhered to the suggested offense level of 32 and sentenced Adames to 135 months in prison.

■ Section 2D1.4 of the Sentencing Guidelines provides that the offense level for an attempt to commit an offense involving a controlled substance is the same as if the object of the attempt had been completed. Application Note 1 to § 2D1.4 provides, "If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." The district court followed this commentary by basing Adames' offense level on the 7.7 kilograms of heroin under negotiation, not the single kilogram actually transferred in the sale. Adames argues that Application Note 1 should not apply to reverse transactions, where undercover agents sell instead of buy.

Adames argues that the phrases "traffic in a controlled substance" and "under negotiation in an uncompleted distribution" imply a sale rather than a purchase by the defendant. We disagree. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). "Traffic" means the passing of goods from one person to another for an equivalent in goods or money. Black's Law Dictionary 1340 (5th ed. 1979); 87 C.J.S. *Traffic* (1954). "Negotiation" is the act of arranging the terms and conditions of a sale. Black's Law Dictionary 934; 66 C.J.S. *Negotiation* (1950). "Traffic" and "negotiation" necessarily involve at least two parties. One does not have to be a seller to be involved in a negotiation to traffic in controlled substances.

Adames places mistaken reliance on a subsequent sentence in Application Note 1 that reads, "Where the defendant was not reasonably capable of producing the negotiated amount the court may depart and impose a sentence lower than the sentence that would otherwise result." Although this sentence refers to a specific situation in which the defendant is a seller of drugs, it does not follow that the broader sentences which precede it in Application Note 1 are inapplicable to defendants who are buyers of drugs. *See Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975).

In interpreting the Sentencing Guidelines, we must consider the common sense of a particular provision, its purpose, and the consequence of proposed interpretations. *See New York State Comm'n on Cable Television v. FCC*, 571 F.2d 95, 98 (2d Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978). Federal law generally punishes those who possess controlled substances with intent to distribute equally with those who actually distribute them. *See* 21 U.S.C. § 841(a)(1). Application Note 1 applies to anyone involved in the traffic of a controlled substance. Because Adames was involved in an attempt to traffic a total of 7.7 kilograms of heroin, the district court did not err in sentencing him on the basis of that amount. *See United States v. Ehret*, 885 F.2d 441, 445 (8th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

■ Adames' challenge to the district court's refusal to consider him a minor or minimal participant under § 3B1.2 is equally without merit. Adames based his request to be considered a minor or minimal participant on his poor financial condition and on the fact that the $723,000 which he applied to the purchase price was delivered to him by his codefendant, Frank Liranzo. Adames contends that he was a mere go-between in the transaction and had only a small financial interest at stake. The district court found, however, that Adames was not a minor participant, *e.g.*, "I certainly cannot characterize Mr. Adames' role in this as either minor or minimal given his participation in the negotiations"; "I can-

not find and do not find that his role was in any way minor or minimal."

Section 3B1.2 applies to a defendant who was "substantially less culpable than the average participant" in the offense. *See* Commentary to § 3B1.2. In addition, a "lack of knowledge or understanding of the scope and structure of the enterprise" is indicative of a minor or minimal role. Application Note 1 to § 3B1.2. Adames was substantially more culpable than the other participant in this case, who only carried the money to the hotel where the transaction was culminated. Adames negotiated the purchase of the heroin and attempted to carry out the transaction. In applying the Sentencing Guidelines, the degree of participation is a question of fact that will not be disturbed on review unless clearly erroneous. *See United States v. Lanese,* 890 F.2d 1284, 1291 (2d Cir.1989). The district court did not err in refusing to treat Adames as a minor or minimal participant. *See United States v. Colon,* 884 F.2d 1550, 1551–52 (2d Cir.1989).

AFFIRMED.